# J. Young Scammon *et al.*

## *v.*

# The City of Chicago.

1. Taxes — *of the power of the board of assessors of the city of Chicago to fix the valuation of property.* Under the second section of the revised charter of 1863, of the city of Chicago, the board of assessors at the joint meeting therein provided for, raised the valuation of the property in the south division of the city, forty per cent above the value which had been fixed by the assessor for that division ; the board considering the property *en masse*, and without determining the value of separate parcels. *Held*, that this action of the board was authorized; it being clearly within its power to adopt the valuation of property in any one of the divisions as a standard, and either raise or fall, on the valuation fixed by the respective assessors in the other divisions, in order to equalize the several assessments.

2. Same — *notice not required to be given to property owners of such action.* And in such case, it is no objection, that notice was not given to the property

owners of such addition of forty per cent, as the law requires no notice of such subsequent action to be given.

3. PENALTIES —*for a delay in payment of taxes — void.* The provision contained in section 11, of this charter, providing for a penalty of five per cent, to be imposed for delay in the payment of taxes after a certain day, is void, being in conflict with that provision of the Constitution requiring uniformity of taxation.

APPEAL from the Superior Court of Chicago.

The facts in this case are fully stated in the opinion.

Messrs. HOYNE, FORSYTH & HORTON, and Messrs. BARKER & TULEY and Mr. D. L. SHOREY, for the appellants.

Mr. S. A. IRVIN, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This record is brought here by appeal from the Superior Court of Chicago. It shows a proceeding before that court, at its February Term, 1867, by the collector of the city of Chicago, to obtain judgment against the several lots and parcels of land owned by appellants, on which the municipal taxes remained due and unpaid for the previous year, as appeared upon the general tax warrant in the hands of that officer.

Notwithstanding the multitude of objections, diverse in their character, urged upon that court, a judgment was rendered against the appellants, severally, for the amount of delinquent taxes due from them respectively, the court, through its chief justice, delivering an elaborate opinion in favor thereof, which the counsel for the city has adopted as the basis of his argument, and which is now before us.

That court entered into a close and critical examination of the local law deemed to be applicable to the case, and we have gained much valuable information from an examination of that opinion, and with which, in the main, we fully concur.

Without particularizing the several objections raised, it will be sufficient if we direct our attention to that one which is considered by all the parties as the principal objection, and gives character to the case, and to understand it in its full extent it will be necessary to examine with some particularity — for it is a question of chartered power — some of the provisions of the charter, which the appellee contends affords full warrant for all that has been done.

The objection is, that raising the valuation of the property in the south division of the city, by the board of assessors, when in joint meeting, after the valuation had been fixed and return made thereof by the assessor specially appointed for that division, was *ultra vires*, and consequently void.

It will not be denied by this court, having so often considered and decided the point, that municipal, and other authorities, claiming powers under legislative grant, can exercise such powers only as have been expressly granted, or such as are necessary to carry into effect the granted powers, and this by no strained or forced construction. The point of the objection is, that the assessors of the three divisions, when assembled in counsel, took into their consideration the whole of the real estate in the south division *en masse*, and without determining the value of the separate parcels, undertook by a majority vote to direct, and did direct, the city clerk, to add forty per cent to the value of this real estate, and to extend the tax at that rate on his books, against the same, — all which was done.

Premising that the taxing power is one of the most necessary powers that can be conferred on the legislature, and by that body on subordinate organizations, it must at the same time be remembered it must be executed with reasonable strictness. Taxes, in some form, must be levied in every State, county and city, and their levy must be enforced upon property if not paid in money.

The power to assess the property of the city of Chicago for purposes of taxation, has been conferred by its charter on certain persons denominated a board of assessors. Rev. Charter of 1863. They are municipal officers, and are required to take

and subscribe the oath of office prescribed by the Constitution of the State. This board consists of three persons, who must be freeholders in the city, and one of them taken from each of the three divisions of the city. The appointment is made annually, by nomination of the mayor of the city, with the advice and consent of the common council. This board of assessors are required to perform all the duties in regard to the assessment of property for taxation, for the purpose of levying such taxes as may be imposed by the common council, and in the performance of their duties they have the same powers as are bestowed upon county or town assessors, and are subject to the same liabilities. Private Acts of 1865.

In the charter concerning assessments, it is provided by the first section, that the assessors, immediately after their appointment, shall examine and determine the valuation of the taxable real and personal estate in their respective divisions.

By the term "divisions," as here used, and elsewhere in the charter, we understand those natural divisions produced by the Chicago river and its north and south branches, so called; the territory south of the main stream, and east of the south branch, being known as the south division; that north of the same, and east of the north branch, as the north division; and the remaining territory, lying, as it does, west, both of the north and south branch, as the west division.

To aid these assessors, the city clerk is required to furnish each of them with schedules or lists of all the taxable real estate in the several divisions, on which they are required to enter, opposite the land or lot, their valuation. These are made, in each division, by the division assessor, he examining and determining for himself, in the first instance, the value of the taxable property in his division. When these assessments are completed, which must be by the first Monday of August in each year, unless further time is granted by the common council, they are to be filed in the office of the city clerk, and a day is fixed by the assessors on which they will meet and hear objections to the assessments, of which notice is to be given by the city clerk, by six days' publication in the corpora-

tion newspaper. The object of this notice is plain. It is simply to enable any individual dissatisfied with the value placed on his property by the division assessor, to procure the judgment of the three assessors, sitting as a board, on the question. It is, in effect, giving to a property owner an appeal from the judgment of one assessor to three assessors constituting a board of assessors, and *pro hac vice*, a *quasi* court of appeal.

The powers and duties of these assessors, when thus assembled, are defined by the second section, and on the construction to be placed on this, hinges this controversy.

That section is as follows: " The said assessors shall meet at the time and place designated, to revise and correct their assessments. They shall hear and consider all objections which may be made, and shall have power to supply omissions in their assessments, and for the purpose of equalizing the same, to alter, add to, take from, and otherwise correct and revise the same."

It is said, by one of the counsel for appellants, that the city reads this section as if the legislature had said, or used the words — " And also alter, add to, or change and determine the valuation of all taxable real estate in the respective divisions, as returned and appraised by the respective assessors of said divisions." Counsel insists, such is not the proper reading; that the assessors, individually, charged with the performance of a specific duty within his particular division, cannot, when meeting together, overthrow or supersede the work of each other, by ordering different appraisal lists to be made up without notice to the tax payers, and substitute an entire change of all the valuations, producing, thereby, entirely new and different results.

This leads directly to the consideration of the question, what powers are conferred by this second section, and what duties imposed ?

At the time and place appointed to hear objections, the assessment of each division assessor is subjected to the scrutiny of all the assessors. They are to revise each one of the assessments, with a view to their correction; and this without any motion for such purpose, and independent of any objection

made to them, and in the absence of objections. This power to revise, as defined by lexicographers, is the power to review, re-examine, and look through their pages and columns, in order, if need be, that proper corrections be made. To correct an assessment, means the same as to rectify it,— to amend it, by bringing it to a line of right and justice, from which the division assessors may have departed. The Constitution of this State, by section 5 of article 9, provides that the corporate authorities of counties, school districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. As all the divisions of the city are under the same jurisdiction, it is necessary the valuations within them should be uniform; hence, the necessity of subjecting the assessment of each assessor to the judgment of all of them, in order, if this principle of uniformity has not been observed, that the faulty assessment may be rectified,— may be brought to this line. The section then proceeds to declare, in an independent sentence, not connected with the first subject, that " they shall hear and consider all objections which may be made,"— that is, such objections as may be made by those who appear for such purpose, and they may be of various kinds, but all must be of a character affecting the property owner making the objection ; and they may supply omissions in their assessment,—that is to say, on examination of each assessment list, should it be discovered that a lot has been omitted in either division, or a valuation neglected to be placed against a lot, this omission can be supplied. By force of these several provisions, ample power is given this board, when thus met, to ascertain if each piece of property in the several divisions has been appraised in proportion to its value.

But the section, in plain and unmistakable language, confers other powers; and they are given to carry out the principle of uniformity, which is the one great principle to be observed in assessing property for taxation. For this purpose, for the purpose of equalizing the assessments,— that is, the assessment of

each division, so that they may show on their face uniformity of valuation,— this board can alter one or all of the assessment lists,— can add to or take from one or from all, or otherwise correct and revise the assessments.  Language stronger than this, by which to grant power to this board for the purposes indicated, could not be used.  Under this grant, this board could, as they did, assume the assessment of the north and west divisions as a proper basis, to which they could make that of the south division conform, either by adding to the valuation of each piece of property sufficient to bring it up to the standard established, or by adding a per cent on the whole valuation by which to effect the same object.  So might they have assumed the valuation of the assessor of the south division as the true basis, and brought down that of the north and west divisions to that standard.  The power being given, how it shall be executed must be with the donees of the power.

It is in proof, the valuation in the south division is, on an average, forty per cent less than that of the north or west division, and that of the north and west is not more than one-third of the actual value of the property situate within them.  How unreasonable, then, is the complaint now made, that, with this forty per cent added, in order to equalization, appellants are assessed on property at one-third of its value only.

We can have no doubt, when these several assessments were before this board, and on examination they found that two of them were about right, and the third too low, the board had full power to equalize them, by making any one of the assessments the standard, and bringing the others up to it, or down to it, as the case might be.  Establishing the standard, the clerk was directed to add forty per cent on the valuation of all property in the south division.

Instead of reassessing each piece of property separately, which none deny they could do, even without additional notice, they add forty per cent, which is proved to be requisite, to bring it up to the valuation in the other divisions.  The mode thus adopted may not have been the wisest, and has, perhaps, produced individual hardship in one or more cases; but this does

not affect the question of power, nor furnish any ground for staying the collection of the entire tax list. Nor does the record furnish any evidence, that the property of these appellants has been assessed above its actual value, or higher than similar property in the other divisions. As a question of power, we are satisfied it is bestowed, in the fullest extent, by the second section, and has been exercised properly by the assessors sitting as a board of equalization.

The objection, that the property owners had no notice of this addition of forty per cent, is answered by the fact, that the charter requires but one notice to be given of the meeting, to hear objections and revise and correct the assessments, and to act as a board of equalization. Such a notice was given by the city clerk. But of what avail would be a more special notice? The property owners could not defeat this exercise of power by the board, and notice would have availed nothing. But it is a sufficient answer, that the law required no additional notice. The case cited from 13 California, goes further than we are disposed to go, in a case where the notice required by the statute has been given.

The case of *Bennet* v. *The City of Buffalo*, 17 N. Y. 383, is cited by appellants, in support of this objection of want of notice. That was an action of trespass for taking personal property, by a collector of city taxes, for a special improvement. It was contended by the plaintiff's counsel, that the common council, under the power to correct the description of the land imperfectly described, could not insert in the new assessment roll a different name from the one contained in the former roll, as the owner of the land and the party to be personally assessed; and that, having done so, in this instance, the proceeding was illegal and inoperative upon the plaintiff. It was held, that the original roll could not be collected by a levy on the personal property of a party not named, and that the statute did not, in terms, confer authority to insert a new name. If the power should be implied, the party would be cut off from those modes of correction, and that advantage of notice, which the statutes give to parties named in original

assessment rolls. Four of the judges non-concurred in this opinion, and we do not think it has any very powerful bearing upon this case, as here all the notice required by law was given, and no mistake is alleged.

The reason for the decision in 3 Ind. 452, cited on the first point, and which we omitted to notice in the proper place, is found in the statute of that State.

The State board of equalization had power only to equalize the appraisement of lands in the State, between the several congressional districts, and they proceeded to equalize the appraisement between the several counties in one of those districts. This power, it was held, was not given to that board.

There is, however, one objection, which must reverse the judgment in this case, for the purpose of correcting that particular error. It is in awarding a penalty of five per cent against a tax payer, who may be delinquent for a single day, in the payment of his taxes. We do not think the legislature has any power whatever to impose this penalty for this delay, for the plainest of all reasons, that the taxes would not be uniform. One man would pay, on the same valuation, on December 31, 1866, one hundred dollars, but he who paid on January 1, 1867, would be required to pay one hundred and five dollars. The basis of this additional tax, is not in the valuation of the property, but is a penalty, arbitrarily imposed, for delay in payment of the tax. The city counsel has shown no authority for the imposition of any penalty. The law provides the land shall be sold, if the taxes assessed against it are not paid in the time required. This is as far as the legislature can rightfully go, under a Constitution recognizing uniformity of taxation.

The other objections seem to come under the curative power of sections 15 and 30 of the charter. If they do not, they are not of sufficient importance to require a critical examination, the main points being fully discussed and decided.

For the error in imposing a penalty of five per cent, in addition to the taxes assessed, and rendering judgment therefor, the judgment, on that account, must be reversed, in that particular only. The cause is remanded to the Superior Court, with

instructions to render judgment on the warrant, omitting therefrom the five per cent.

At the September Term, 1867, a rehearing was granted in this case, on the petition of the appellants, in order that the court might further consider the question of the legality of imposing the penalty for non-payment of the taxes assessed. Thereupon, the following additional opinion of the court was announced:

PER CURIAM: On this application for a rehearing we are referred to the case of *Bristol* v. *The City of Chicago,* 22 Ill. 587, as controlling the question of imposing five per cent on the amount of taxes not paid on or before the 1st day of January in each year. In that case, the law authorized the collection of ten per cent on the amount of the special assessment, in case the owner of the land failed to pay it before the collector filed the delinquent list, on an application for an order of sale, as additional costs. That the legislature may provide for the recovery of reasonable costs, either by a percentage on the amount of the recovery, or by fixing specific sums in a bill of items, there can be no doubt. In that case the law was sustained, as it gave that per cent as additional costs, which was manifestly designed to cover the expense of making and advertising the delinquent list, together with other expenses and outlays incurred by the application.

The per cent imposed in that case was upon a special assessment levied for the improvement of a wharf in the city. In such cases, after the levy has been made, labor is performed and expenses incurred by the city in completing the improvement, on the faith of the collection of the assessment to meet the outlay; and it is therefore but reasonable, that the person failing or refusing to pay his assessment, should contribute to the payment of interest which may have accumulated, by delay in paying for labor and materials procured by the city for the construction of the improvement. One of the objects in giving costs is to cover expenses incurred in prosecuting a suit for the recovery of the demand. Hence it is reasonable, that the

delinquent tax payer should in some mode be required to meet the expense incurred in prosecuting a suit for the recovery of the amount, which remains delinquent, and the same is equally true of unpaid special assessments.

That the legislature may authorize the courts to impose and render a judgment for such a penalty, we have no doubt; but we do not believe that such a power can be conferred upon a mere ministerial officer, without any opportunity to be heard by the tax payer. It will be observed, that in Bristol's case the law did not authorize the collector to impose the additional per cent, until he filed his report on the application for the order of sale of the property, and it was then adjudicated upon by the court; while, in this case, the officer was authorized to impose it long before the term of the court at which he is required to file his report of the delinquent list, which is at the term at which he applies for judgment. Had the ordinance in . this case only provided for the imposition of this five per cent at the time of passing the order for the sale of the lands, thus affording the tax payer an opportunity until that time to pay his tax, and to be heard in the court whether he was liable to the forfeiture, this case would then have come within the principle of Bristol's.

The facts in this case afford an illustration of the hardship that is liable to occur from accident, or otherwise, by imposing a penalty at a previous time. It appears that there was a mistake of a large amount in the case of the chamber of commerce, and before it could be corrected the first of January had arrived, and the penalty claimed and attempted to be imposed, without any fault on their part. To impose such a penalty, under these circumstances, would be, to say the least, a hardship and a wrong. If, however, the penalty should not be imposed until after the collector's report is filed on the application for the judgment, then all have a fair opportunity to pay their tax, and be heard against a forfeiture. We are aware of no case where a forfeiture may be imposed and enforced, except by a judgment of a court of competent jurisdiction. If the collector may impose this per cent, he can enforce it by distress

and sale of property, without the tax payer having been legally adjudged to have incurred a penalty. When a per cent is imposed for taking an appeal for delay, or for failing to pay a note due to the school fund, the penalty is imposed by the judgment of the court, and not by the creditor, or a ministerial officer. It is believed to be a general rule, without an exception, that forfeitures cannot be enforced, except through the judgment of a court of competent jurisdiction, and this is true whether it be called costs, damages, or a penalty. A judgment must be first had before satisfaction can be enforced.

We do not, therefore, regard Bristol's case as governing this, as it is materially different both in the facts and principles involved. With these additional reasons we adhere to the original opinion filed in the case.

*Judgment affirmed.*