MARK KIMBALL, Collector, etc.

v.

THE MERCHANTS' SAVINGS, LOAN AND TRUST COMPANY.

1. TAXES—*when enjoined.* A court of chancery has jurisdiction to enjoin the collection of a tax, and will exercise it in all cases where the tax has been levied without authority of law, or where the property is not subject to taxation.

2. SAME—*equalization by county board.* If any material increase is made by a county board in the aggregate amount of all the towns or districts, in equalizing the valuation between the different towns, beyond what is actually necessary or incidental, it is without authority of law, and void.

3. Where a county board of equalization raised the tax on personal property in one town twenty per cent, without any corresponding deduction in other towns, so that the valuation of taxable property of the county was raised $2,000,000, and the State board, taking the aggregate valuation of the several counties as a basis, as the law required, raised the valuation of personal property in the same county fifty-seven per cent, which was added to the increased valuation as made by the county board, it was *held*, that the proceedings of the county board increasing the valuation were not merely irregular, but without sanction of law, and void, and the tax on such increased valuation was enjoined.

APPEAL from the Appellate Court of the First District; the Hon. THEODORE D. MURPHY, presiding Justice, and GEO. W. PLEASANTS and J. M. BAILEY, Justices.

Mr. JOSEPH S. BONFIELD, for the appellant.

Mr. JOHN M. ROUNTREE, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This bill was filed by the Merchants' Savings, Loan and Trust Company, against Mark Kimball, collector of taxes for the town of South Chicago, to enjoin a portion of the tax assessed on its personal property for the year 1877. Except that portion of the taxes which it seeks to enjoin, the company has paid to the collector all taxes levied on its personal property, and only asks relief against that part which, it is averred, is without authority of law.

As to the principal facts, there is no controversy between the parties. In the spring of 1877 the assessor of the town of South Chicago, in which complainant is assessed, received from the company a statement of its personal property liable to taxation, and placed upon it a valuation, as of the first of May, of $500,000, and it was so returned to the county clerk without change or modification. On the 10th of August the county clerk certified to the Auditor of State, in pursuance of section 98 of the Revenue law, an abstract of assessments of property in Cook county, as made by the assessors of the several towns, which included the valuation of complainant's property. On the 20th day of the same month the county board met as a board of equalization to equalize the assessments made by the assessors of the several towns of the county, in pursuance of the 97th section of the Revenue law, and, for the purpose of equalizing the assessments between the several towns, added 20 per cent to the assessed value of personal property in the town of South Chicago, but made no changes in other towns. As to railroad property and real estate no material changes were made in any of the towns. The per cent added to personal property in South Chicago increased the aggregate value of the assessed property in that town over $2,000,000, and, as a necessary consequence, increased, by a large per cent, the aggregate assessed value of the entire property of the county. That equalized value of the assessed property of the county, as made by the county board, the county clerk certified to the State Auditor and he submitted it to the State Board of Equalization, but whether that board ignored it or took action upon it, is a matter in dispute. It is certain, however, the State board directed that 57 per cent be added to the assessed value of personal property in Cook county. It is conceded, by stipulation, that the county clerk added to the assessment of $500,000, made on the personal property of complainant in South Chicago, 20 per cent, in conformity with the action of the county board, making the sum of $600,000, and to this sum added 57 per cent, the rate

directed by the State board to be added to personal prop-
erty in Cook county, making the sum of $942,000, and upon
this latter sum he computed and extended the several kinds
of taxes for the year 1877. It is also conceded, that neither
complainant nor any of its officers had any actual or personal
notice or knowledge of any proposed changes of the assess-
ments in the town of South Chicago, or that the county board
proposed in any way to change the assessment on the personal
property of complainant, and that the company had no notice
whatever other than the general notice published in a daily
newspaper notifying all persons feeling themselves aggrieved
by assessments in 1877 to present their complaints in writing
to the county board, and of the time and place of the meeting of
the committee on equalization. On the hearing, the circuit
court entered a decree making the injunction previously
awarded perpetual, and on appeal to the Appellate Court the
decree was affirmed. The case is now to be heard in this
court on the appeal of defendant.

It will not be denied, if there was a total want of authority
in the county clerk to extend the tax against the property of
complainant on the increased valuation as made by the county
board, that equity has jurisdiction to restrain its collection.
The principle of the cases in this court, on this subject, is,
that a court of chancery has jurisdiction, and when invoked
will assume to exercise it in all cases where the tax has been
levied without authority of law, or where the property is not
subject to taxation. *Town of Lebanon* v. *Ohio and Missis-
sippi Railroad Co.* 77 Ill. 539. Our sole inquiry, therefore,
will be, whether there is any authority for the action of the
county board in adding 20 per cent to the assessed valuation
of personal property in the town of South Chicago, by which
complainant's assessment on personal property was so much
enhanced. The decision depends mainly on the construction
that shall be given to the 97th section of the Revenue act.
That section defines the duties of the county board, and then
declares in the 4th division "it shall ascertain whether the

valuations in one town or district bear a just relation to all the towns or districts in the county, and may increase or diminish the aggregate valuation of property in any town or district by adding or deducting such sum upon the hundred dollars as may be necessary to produce a just relation between all the valuations of property in the county, but shall, in no instance, reduce the aggregate valuations of all the towns or districts below the aggregate valuation thereof as made by the assessors, neither shall it increase the aggregate valuations of all the towns or districts except in such an amount as may be actually necessary and incidental to a proper and just equalization."

It will be observed that this clause of the statute imposes two limitations on the action of the county board, in the matter of equalizing taxes between the several towns or districts of the county to make them bear a just relation to each other: First, in no instance shall the county board reduce the aggregate valuations of all the towns or districts below the aggregate valuation as made by the assessors; and second, the county board shall not increase the aggregate valuations of all the towns or districts except in such an amount as may be actually necessary or incidental to a proper and just equalization. Evidently it was the intention, and that is the plain meaning of the statute, in equalizing valuations so as to make the valuations in the several towns or districts of the county bear a just relation to each other, it should be done by the county board adding or deducting from other towns or districts as may be necessary, and still retain, as near as practicable, the aggregate valuation of all the towns or districts of the county, keeping always in view the limitations imposed, that in no instance shall such aggregate valuation be diminished, nor shall it be increased except in such an amount as may be actually necessary or incidental to produce a proper and just equalization. It follows, as a matter of course, that any material increase, beyond what was actually necessary or incidental, of the aggregate valuations of all

the towns of the county, as was made in this case, is without authority of law, and must for that reason be void. It is not merely an irregular or erroneous exercise of powers conferred, but it is an imposition of taxes in a case where no authority is given by statute, which is the source of all power a county board may rightfully exercise in such matters.

This construction finds support in other provisions of the statute designed to secure equality in taxation in the several counties of the State. Construing the Revenue law as establishing one system for levying and collecting taxes, it often happens that the obscurity that may appear in one section is removed by reference to other sections on the same subject. That system, which, if perfectly executed, tends most to produce equality in the imposition of taxes upon citizens of the State, finds sanction in the constitution. On the other hand, any Revenue law, which, if perfectly administered, necessarily produces inequality in taxation, is plainly inhibited by constitutional restrictions. Our revenue system was evidently intended to produce equality in taxation, not only between the towns or districts of the county, but also between the several counties of the State, and any construction that will best promote that design ought to be adopted.

Our understanding is, the State board equalizes upon the aggregate valuations of all the towns or districts of the several counties of the State, as made by the assessors, but when that is done, and the rate per cent to be added to or deducted from the aggregate valuations, in any county, is fixed by the State board, it is to be added to or deducted from the aggregate equalized valuations as fixed and ascertained by the county board of that particular county. That shows the absolute necessity for the restrictions placed on county boards, that they shall, in no instance, reduce the aggregate valuations made by the town or district assessors, nor increase that valuation more than is actually necessary or incidental to a proper and just equalization. Should they do so, it is apparent it would at once destroy any equalization the State board might make.

No better illustration could be given than the case in hand. Here, the county board increased the aggregate valuation of personal property, as made by the assessors of the several towns of the county, by a sum exceeding $2,000,000. The State board, it seems, took as a basis for its action, as was its duty under the law, the aggregate valuations made by the local assessors, and determined the rate per cent to be added to personal property in Cook county to make that county bear a just relation to other counties in the State, and when that rate per cent was added, as was afterwards done, to the equalized valuation, as made by the county board, it is clear the equalization as made by the State board was effectually destroyed. Nothing can be plainer than, by the mode adopted, the taxpayers in the town of South Chicago, of whom complainant was one, were subjected to unjust burdens of taxation,—not only unjust because unequal, but wholly without authority of law.

The case of *Scammon* v. *The City of Chicago*, 44 Ill. 269, cited, is not an authority in the case we are considering. That case arose under a different law—one that conferred power on the board acting for the purpose of equalizing assessments "to add to, take from, or otherwise correct and revise the same" without imposing any limitations upon their discretion in the matter. It is a misapprehension to suppose the present revenue law invests county boards, in the matter of equalizing assessments between the several towns or districts of the county, with a discretion to diminish in any instance, or raise, the aggregate valuations made by the assessors beyond an amount that may be actually necessary or incidental to a proper and just equalization. Had the legislature invested county boards with a discretion as to the amount that should be added or deducted in any given case, in equalizing valuations, without imposing restrictions, then the rule declared in *Law* v. *The People*, 87 Ill. 385, as to reviewing such discretion, would apply. But the fallacy of the argument on this branch of the case lies in the assumption county boards have

a discretion in such matters. Such is not the case. The powers such boards may rightfully exercise are defined, and limits fixed beyond which they may not go. All acts beyond the restrictions imposed are void, as being without warrant of law.

In *Buck* v. *The People*, 78 Ill. 560, the aggregate valuations as made by the assessors in the several towns, was, in fact, raised, but the per cent being a trifle over one-fourth of one per cent, it was so small it was thought it "was altogether necessary and incidental to a proper and just equalization," and it was permitted to stand. The same construction here given to the statute was recognized in that case.

That portion of the tax complained of rests on no assessment made by any authority of law, and is therefore void. *Town of Lebanon* v. *Ohio and Mississippi Railroad Co. supra.* The error affects the justness of the tax itself, and is not within the saving clause of the statute.

The decree will be affirmed.

*Decree affirmed.*