HON. HENRY W. SCOTT,
HON. A. G. CURTIN BIERER,
HON. JNO. L. M'ATEE,
HON. JOHN C. TARSNEY,
ASSOCIATE JUSTICES.

---

J. R. WALLACE, *et al.*, v. H. B. BULLEN, *et al.*

(Filed July 17, 1896.)

1. INJUNCTION—*Illegal Tax.* Injunction will lie in this Territory to enjoin the illegal levy of any tax, charge or assessment, or the collection of any illegal tax, charge or assessment, or any proceeding to enforce the same. And without express statutory authority the general powers of a court of equity would be ample to afford such relief.

2. TAXATION—*Property Assessed at True Value.* The revenue laws of this Territory establish one system for levying and collecting taxes, and under such system all property is made subject to taxation and required to be assessed at its true value.

3. ASSESSMENTS—*Equalization Boards.* The township assessor, clerk and treasurer compose a board of equalization for townships. The city assessor, mayor or president, and city clerk compose the board of equalization for cities, towns and villages, and such boards are authorized to hear all complaints of persons who feel aggrieved by their assessments, and the decision of such boards are final as to individual assessments, except as the same may be affected by a general increase or decrease authorized by the county or territorial boards of equalization under their authority to equalize values between the several townships of a county or between the several counties of the Territory.

2—

4. TAXATION—*Uniform.* The limitations fixed by the laws of this Territory upon the different officers and board which comprise the machinery of the law for the taxing powers of the Territory, are first, the taxation must be equal and uniform; second, in assessing they must not fix values higher than the true cash values of the property assessed; and third, in levying they must not levy a higher rate than that limited by law.

5. SAME—*Scope of Authority.* When property has not been valued for taxation beyond its true cash value, or a greater rate of taxation levied upon such value than that authorized by law, the owner of property has not been injured, and cannot be heard to complain, provided his property has been taxed equally and uniformly with other property in the taxing district.

6. EQUALIZATION—*Territorial, County and Township Boards.* The territorial board of equalization is a constituent part of the machinery for fixing the valuation of property for the purpose of taxation. The township board may increase or lower any individual assessment and the county board may raise or lower the aggregate of assessments returned from the different townships of a county and the territorial board may lower or raise the valuations of the various counties.

7. TERRITORIAL BOARD OF EQUALIZATION—*Powers Of.* The territorial board of equalization is the ultimate and final tribunal of review, with power of correction to the end that the valuations of property as fixed for the purposes of taxation shall be made to conform to the requirements of the law, to the end that all property shall be assessed at its true value.

8. UNIFORM VALUATION OF PROPERTY—*How Obtained.* The honest and uniform valuation which the law expressly demands, is the assessment of property at its true cash value, and where the territorial board of equalization finds that one county has returned its property at its true cash value and every other county has returned its property below the true cash value, the board may order that percentage to be added to the returns from those counties which are below such value, as will bring the latter up to the basis of the former, and the requirement of the law.

9. TERRITORIAL BOARD OF EQUALIZATION—*General Powers Of.* The statute creating the Territorial Board of Equalization conferred upon that board authority to review and correct the valuations of property for taxation returned to them by the county clerks of the several counties of the Territory, and to equalize such valuation upon the basis of the true cash value of the property, and may lawfully increase the aggregate valuation of property in the several counties of the Territory as returned by the clerks of the several counties.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before A. G. C. Bierer, District Judge.*

*Horace Speed* and *H. A. Smith,* for plaintiffs in error.

*C. A. Galbraith, Attorney General,* and *T. H. Soward,* for defendants in error.

Action by injunction commenced on petition of *H. B. Bullen, et al. v. J. R. Wallace,* as treasurer, the board of county commisioners, and the sheriff of the county of Noble, to restrain the defendants from collecting certain taxes. On behalf of the defenadants below the case is brought to this court by petition in error.

### STATEMENT OF FACTS.

The petition in this case was filed in the court below by H. B. Bullen and some seventy-five others, individuals, co-partners and corporations, taxpayers of Noble county, against J. R. Wallace, as treasurer, and the board of county commissioners and sheriff of said county, praying an injunction to restrain the said treasurer, county commissioners, and sheriff from levying or collecting against the petitioners, or their property, certain taxes alleged in said petition to have been illegally assessed for the year 1895.

The facts presented by this record necessary to be considered in determining the controversy are, that the plaintiffs were the owners of real and personal property situated in said county of Noble and subject to assessment for, and to the payment of, taxes therein for territorial, county and other purposes for the year 1895.

That each of said plaintiffs duly made return for taxa-

tion of the property respectively owned by them to the proper assessors for taxes within said county for said year 1895. That subsequently thereto action was taken. upon said returns and assessments were made of the property of each of said plaintiffs by the officers authorized by law, including said assessors, the boards of equalization of the several townships, of said county, and the board of equalization of the city of Perry, in said county.

That the said assesment rolls of the several townships of said county, and of the city of Perry were, by the county board of equalization of said county, duly examined and the valuations of property in the several townships, and said city of Perry, were equalized by said county board of equalization; and the assessment rolls of property in said county thus equalized was, as required by law, sent to the territorial board of equalization. That the total assessed valuation of all the real and personal property in said county, as equalized by said county board of equalization, was not less than the fair average valuation of property returned to the territorial board of equalization by the several counties of the Territory. That the aggregate of valuation of assessments sent to the territorial board of equalization from the several counties amounted to approximately the sum of twenty-eight millions of dollars. That the territorial board of equalization, upon receiving such assessment lists from the several counties, met and ordered an increase in valuation on the aggregate assessment of each county in the Territory, except the county of Kingfisher, claiming that the property in each county, except Kingfisher county, was not valued at its fair valuation. That the increase thus ordered in the several counties varied from about 5

per cent. to over 75 per cent., and the total valuation of. all the property in the Territory subject to taxation was by said board thus increased from about twenty-eight million dollars to about thirty-nine million dollars.

That said territorial board of equalization ordered that the valuations of all property returned by the board of equalization of Noble county should be increased 35 per cent. That the county clerk of Noble county, upon receiving a certificate from the territorial board of equalization ordering such increase, immediately proceeded to change the lists of valuation and increased the valuation of all the property of the plaintiffs, respectively, as fixed and returned by the assessors, and by the county board of equalization, 35 per cent. and extended such valuations thus increased upon the assessment roll of said county and upon the assessment of the property of each of said plaintiffs upon said roll. That at the time said territorial board of equalization increased the valuation of the property returned for taxation in said county 35 per cent. said board also fixed the rates of levy for taxation for territorial purposes as follows: Normal school fund levy, one-half mill on the dollar; University fund, one-half mill on the dollar; Bond Interest fund, one-half mill on the dollar; Board of Education fund, one-tenth of one mill on the dollar; General Territorial fund, three mills on the dollar. That these rates were the maximum rates for each of said funds allowed by law; that the taxing officers of said county levied the several rates as also the several rates from the different county funds and purposes ordered by the county commissioners, and the tax roll was extended upon the books of the county treasurer with these several rates levied upon all the property .

said county, including the property of the plaintiffs respectively, upon the basis of valuation fixed by the territorial board of equalization. That thereby the tax charged against and sought to be collected of each of the plaintiffs, was and is, 35 per cent. greater than the same would have been had not said territorial board of equalization increased the valuation as stated. That each of said plaintiffs had tendered to said county treasurer the amount of taxes charged upon the books of said treasurer against said palintiffs, respectively, less 35 per cent. of the amount thereof, which tender was refused by said treasurer. That said taxes so levied are a lien and incumbrance upon the property of plaintiffs, respectively; that said county commissioners have ordered said treasurer, to collect said taxes for the use and benefit of said county, and territory, and that said treasurer at the time this action was instituted, was about to collect the whole of such taxes, including the 35 per cent. increase, as stated.

The basis of the action of the territorial board of equalization, which is complained of, as being without warrant of law and illegal, by plaintiffs, is shown by a copy of the record of said board attached to the answer of the defendants and make an exhibit therein, and said record, as shown by said exhibit, is as follows:

"Exhibit A.

"GUTHRIE, Okla., June 17, 1895.

"Agreeable to the provisions of art. 1, ch. 43, of the Session Laws of 1895, the territorial board of equalization met in the office of the territorial auditor, in the city of Guthrie, at 5:30 o'clock P. M., Monday, June 17, 1895, the following members being present: T. J. Lowe, territorial secretary, and E. D. Cameron, territorial auditor; Gov

ernor W. C. Renfrow was absent on account of sickness. The board organized by electing T. J. Lowe president, and E. D. Cameron secretary. Returns of assessments not having been received from the counties of Day, Grant, Noble and Pawnee, the board adjourned to meet at 10 o'clock the following Thursday, June 20.

"Guthrie, Okla., June 20, 1895.

"The board met pursuant to adjournment. Present T. J. Lowe, president, E. D. Cameron, secretary. On examination and comparison of the returns of assessment from the several counties, the average rate of valuation of Kingfisher county was found to be the highest, and, in the opinion of the board, the most equitable, and the most nearly in accordance with the law requiring all the property to be assessed at its actual cash value. The valuation of Kingfisher county was, therefore, adopted as a basis for equalization. The secretary of the board was directed to compute from the various returns of assessments the percentage required to be added to each for the purpose of equalization on the above basis

"Board adjourned to meet at 3 o'clock P. M."

AFTERNOON SESSION.

"The board met at the time designated. From the computations made by the secretary of the board it was found necessary to make the following per centum increase, and it was by the board so ordered: Kingfisher, 00; Beaver, 75; Blaine, 20; Canadian, 45; Cleveland, 20; "D," 50; Day, 30; "G," 30; Garfield, 35; Grant, 30; Kay, 35; Lincoln, 35; Logan, 45; Noble, 35; Oklahoma, 30; Pawnee, 35; Payne, 25; Pottawatomie, 35; Roger Mills, 5; Washita, 30; Woods, 40; Woodward, 40.

"The property of the Western Union Telegraph company, where not already assessed to the railroad companies by the territorial board of railroad assessors, was valued at forty dollars per mile, for the first wire of line, and ten dollars for each additional wire. The following levies for territorial purposes for the year 1895, were or-

dered, and the territorial auditor was directed to certify the same to the several counties for collection: For General Revenue fund, three mills on the dollar of assessed valuation; for Normal School fund, one-half mill on the dollar of assessed valuation; for University fund, one-half mill on the dollar of assessed valuation; for Bond Interest fund, one-half mill on the dollar of assessed valuation; for Board of Education fund, one-tenth mill on the dollar of assessed valuation. The auditor was order ed to forthwith make the necessary return of the findings of the board to the several county clerks as by law provided. The board adjourned *sine die.*

"E. D. CAMERON, Territorial Auditor, and Secretary Board of Equalization."

The court below sustanied the demurrer to the answer of the defendant, and the defendants failing further to plead, the court entered judgment upon the facts stated in plaintiff's petition, granting a perpetual injunction, restraining the defendant from collecting or enforcing the payment of 35 per cent. of the taxes assessed against them as stated. To the action of the court, in sustaining said demurrer to defendant's answer and in rendering judgment for the plaintiffs, the defendants duly excepted, and have brought the case to this court by petition and summons in error. The assignments of error were:

1. That the court erred in holding that the 35 per cent. added to the valuation of plaintiff's property by the territorial board of equalization, and entered on the tax roll of Noble county, against the property of the plaintiffs was illegal and made without authority of law.

2. That the court erred in granting a perpetual injunction against the collection of the tax levied on said increased valuation of the property of each of defendants in error.

Opinion of the court by

TARSNEY, J.: The contention of defendants in error is that the action of the territorial board of equalization in raising the valuation of the property in Noble county 35 per cent. and in all the other counties in the Territory, except the county of Kingfisher, by the per centage shown, without diminishing the valuation of the property returned for said county of Kingfisher, thereby increasing the aggregate of the value of all the property returned for taxation in all the counties of the Territory, over the valuation fixed and returned by the several boards of county equalization, to the amount of about eleven millions of dollars, was without authority of law. That that part of the taxes levied upon the property of the defendant in error which resulted from such increased valuation, was levied without authority of law, and is therefore void, and that as to such part of the levy against their property, they are entitled to relief by injunction.

Counsel both in their briefs and in oral arguments to the court have presented a number of questions, touching the sufficiency of the pleadings, and the rulings of the trial court thereon, but in view of the fact that this case involves, not only the rights of the parties of record, but also involves grave questions of public concern, we have concluded to waive consideration of mere technical questions and consider only those questions which involve, upon the merits, the substantial rights of the parties and of the public.

If the contention of counsel for defendants in error that the action of the board of territorial equalization was without authority of law, and that that part of the

taxes upon their property which resulted from the un-authorized act of such board was illegal, will injunction lie to prevent the collection of such illegal tax?

We think in such case a court of chancery has jurisdiction, and that relief may be granted by injunction. In this Territory there is express statutory authority therefor. By sec. 4143, of the Statutes of Oklahoma, Statutes of 1893, it is provided, "An injunction may be granted to enjoin the illegal levy of any tax, charge or assessment, or the collection of any illegal tax, charge or assessment, or any proceeding to enforce the same, and any number of persons, whose property is affected by a tax or assessment so levied may unite in the petition filed to obtain such injunction."

Without this express statutory authority, we think that the general powers of a court of equity, would be ample to afford relief in the case stated. Numerous well considered cases would indicate the principle as settled that a court of chancery has jurisdiction, and when invoked will assume to exercise it in all cases where a tax has been levied without authority of law, or where the property is not subject to taxation. (Cooley on Taxation, ch. 24: *Town of Lebanon v. O. & M. R. Co.*, 77 Ill. 539, and cases cited.)

While we hold that this statute does not create a new remedy, but was intended to enlarge the jurisdiction of courts of equity to restrain the illegal levy or collection of a tax, we are not required in this case to decide that this remedy may be invoked in every case where a tax has been irregularly or illegally assessed or levied; or, that it may be invoked in any case without the party invoking it bringing himself within the general principles

of equitable relief in addition to establishing the illegality complained of. We simply hold that if the act complained of in this case was without authority of law, the case, as presented, brings the defendants in error within the general principles of equitable relief, and that the court below had jurisdiction.

The remaining question —the vital question in controversy in this case—is, was the action of the territorial board of equalization complained of without authority of law? It will not be denied that, if there was a total want of authority in the territorial board of equalization to increase the valuation in the manner shown and complained of, that defendants in error are entitled to the relief prayed for. Our sole inquiry, therefore, will be whether there is any authority for the action of said board in adding 35 per cent. to the assessed valuation of property in Noble county, by which the plaintiffs' assessments and taxes levied thereon was so much enhanced.

Construing the revenue law of the Territory as establishing one system for levying and collecting taxes, it here, as often happens, that the obscurity that may appear in one section is removed by reference to other sections on the same subject. By the revenue law of the Territory all property is made subject to taxation, and all such property is required to be listed and assessed. An assessor of property is provided for in each township and city of the Territory. Every property owner is required to furnish the assessor an itemized account of all classes of property owned or held, by him or her, which by law is subject to assessment, with the true value thereof. The assessor may require the property owner to verify such list or statement by oath or affirmation, and if such

property owner neglect or refuse on demand of the assessor to give, under oath or affirmation, the statement required, the assessor shall ascertain and estimate, from the best information he can obtain, the number, amount, and cash value of all the several species of property required, and list the same accordingly. If any person shall wilfully make or give, under oath or affirmation, a false list of taxable property, or place a false value thereon, he is to be deemed guilty of perjury. The assessor of each township and city is required, from all lists and statements returned to him by property owners, and from all lists and statements made by himself, where property owners have neglected or refused to make return of such statement, as required by law, to make up an assessment roll, and attach thereto his oath, which, among other things, shall state that said assessor has diligently, and to the best means within his power, endeavored to ascertain the true amount of value of the property returned, and that he verily believes the full value thereof is set forth in said assesment roll, and said assessor shall deliver such assessment roll and oath attached to the county clerk of his county on or before the first Monday of May, annually. The township assessor, clerk and treasurer compose a board of equalization for townships. The city assessor, mayor or president, and city clerk compose the board of equalization for cities, towns and villages, and such boards are authorized to hear all complaints of persons who feel aggrieved by their assessments, and the decision of said boards are final as to indiviual assessments, except as the same may be modified by a general increase or decrease in value ordered by county or territorial boards of equalization in equalizing values between the several townships in the

county, or between the several counties in the Territory. The board of county commissioners constitute the board of equalization for the several counties. Their duties are to equalize the assessment rolls in their county between the different townships. After such assesment rolls are thus corrected and equalized, the clerk of the county is required to make out an abstract of the same and transmit such abstract to the auditor of the Territory.

The decision of this case depends on the construction that shall be given to these provisions of law, and to sec. 2624, of said law, as amended by an act approved March 8, 1895, which said amended section reads as follows:

"The governor, territorial auditor and secretary shall constitute the territorial board of equalization, and said board of equalization shall hold a session at the capital of the Territory, commencing on the third Monday of June, each year; and it shall be the duty of said board to examine the various assessments and to equalize the same, and to decide upon the rate of territorial tax to be levied for the current year, together with any other general or special territorial taxes required by law to be levied, and to equalize the levy of such taxes throughout the Territory. And shall therefrom find the per centage that must be added to or deducted from the assessed value of each county, and shall then order the per centage so found to be added to or subtracted from the assessed values of each of the various counties of the Territory, and shall notify the various clerks of the per centage so ordered to be added to or subtracted from the valuation of property in their respective counties. It shall then be the duty of the various county clerks to add to or deduct from the total value of the property assessed to each party, the per centage so ordered, and collect the taxes accordingly. Said board shall assess the rolling stock of railroads and all other property not otherwise provided for."

Section 1, art. 8, ch. 70, of the Statutes of the Territory of Oklahoma, as amended by an act approved March 8, 1895, reads as follows:

"SECTION 1. The rate of general territorial tax shall not be less than one-half mill, nor more than three mills on the dollar valuation, and, in addition, one-half mill each year for the erection and support of a Territorial Normal school, and one-half mill each year for the erection and support of a Territorial University, and such levies for county purposes as are hereinafter provided, and such other taxes as may be authorized by law."

These various provisions and sections provide a comprehensive plan and scheme for the assessment and levy of taxation for the support of the territorial, county, and municipal government. Each officer or board had a separate and distinct jurisdiction within which he or it has distinct duties to perform, and for which there is a distinct and clearly defined authority of law. These several officers and boards may be said to comprise the machinery of the law for exercising the taxing powers of government. Each must act within the special scope of his or its authority, and when so acting, the only limitation that we can discover to the combined authority and jurisdiction of all is, that their imposition of taxation must be equal and uniform; in assessing they must not fix values higher than the true cash value of the property assessed; and in levying they must not levy a higher rate than that limited by the law. In other words, the general scope of the jurisdiction and powers of the taxing authorities is to impose taxation upon property assessed at its true cash value, and at a rate not exceeding the maximum fixed by law; and when the authorities have proceeded and acted within the scope of their authority

as thus defined, and property has not been valued for taxation beyond its true cash value, or a greater rate of taxation levied upon such value than that authorized by law, the owner has not been injured and can not be heard to complain, provided his property has been taxed equally and uniformly with other property in the taxing district.

While it is asserted by counsel for defendants in error that the board of equalization of the Territory acted without authority of law, in increasing the value of the property in Noble county 35 per cent., it is not contended by them that such board had no authority in any case or for any purpose to change the valuation of such property as returned by the assessor. It must be conceded that the board of equalization is a constituent part of the machinery for fixing the valuation of property for the purposes of taxation. The valuation by the assessor is not final because upon complaint the township board may increase or lower any individual assessment. The action of such township board is not final, because the county board, while it may not act directly upon an individual assessment, is yet directly authorized in equalizing the aggregate valuation of the several townships, to lower or raise the aggregate value as returned for any of such townships; and the territorial board, it must be conceded, in the exercise of its admitted functions to equalize the valuations of the various counties, may lower or raise the valuation as returned from any county. In fact, it is mandatory upon them that they shall, if inequality exists. No other deduction can be drawn from this system than that it was intended that in the determining of valuations for taxation, the township board should exercise

the powers of review and correction over the work of the assessors; that the county boards should exercise like powers of review and correction over the work of the township boards; and that the territorial board should be the ultimate and final tribunal of review, with power of correction, to the end that such valuation might be made to conform to the requirements of the law, viz: the true value of the property.

Counsel for defendants in error, while conceding that the board may increase or diminish the aggregate valuation of any county, for the purpose of equalizing such valuation with the valuations of the other counties, yet contend, in the words of the statute granting the power, *"To examine the various county assessments, and to equalize the same,"* limits and restricts the powers of said board to equalizing and adjusting valuation already fixed; that the term *assessments* is synonymous with *valuations*, and here import values already determined. That such valuations already fixed are the aggregate of material with which the board could deal; that they may adjust, equalize, and distribute this aggregate of valuations among the several counties, but that they can not add to its value.

In support of this construction we are cited to the cases of *People ex rel. Crawford v. Lothrop*, 3 Col. 428; *Kittle v. Sherwin*, 11 Neb. 66; *State, ex rel. Lincoln v. Edwards*, 31 Neb. 370; *Kimball v. Savings L. & T. Co.*, 89 Ill. 611; *Orr v. State Board of Equalization*, Supreme Court of Idaho, 28 Pac. Rep. 416.

A careful analysis of these cases will lead to the conclusion that none of them, unless it be the Colorado case, will, even apparently, support the contention of defendants in error.

In *Kittle v. Sherwin*, 11 Neb. 66, the city council of the city of Fremont, sitting as a board of equalization, without any notice to the taxpayers, or to the plaintiffs, raised the assessed value of each and every assessment in the city 10 per cent. above the assessed value made by the assessor, and the valuation of the plaintiff's premises, and all property in said city, was 10 per cent. higher in its assessed value, than the same was for state and county purposes assessed. The relative values of the property assessed was not changed. The court held the city council, sitting as a board of equalization, had no power to thus raise the assessed value of all the property assessed in said city; that such raising of valuation was not equalizing in any sense. We have already shown that the powers of a city or township board of equalization is limited to action upon individual assessments, consequently they have no authority to increase the value of the aggregate of assessments in the city or townships by a uniform per centage, and the principle of that case bears no analogy to the case before us.

In *State, ex rel, Lincoln Land Co. v. Edwards*, 31 Neb., 370, the court construed and applied a statute of the state which in express terms prohibited the board of county equalization from reducing or increasing the aggregate valuation fixed and returned by the assessor, except such increase or reduction as should be incidental merely.

In the case cited from the supreme court of Idaho, *Orr v. State Board of Equalization, supra,* the state board of equalization was by statute invested with power "to raise or diminish the valuation of the several counties," but the manner in which this should be done was clearly directed by the statute as follows:

3—

"First. They shall add to the aggregate valuation of real and personal property of each county which they believe to be valued below its proper valuation such per centage in each case as will raise the same to its proper valuation."

"Second. They shall deduct from the aggregate valuation of real and personal property of each county which they believe to be valued above its proper value such per centage in each case as will reduce the same to its proper valuation."

The powers of the board were clearly limited by the statute. They were authorized to raise or diminish the valuation of the several counties, but only in the manner directed by the statute, viz, they might add to the aggregate valuation of property of each county which they believe to be valued below its proper valuation; or, they might deduct from the aggregate value of the property of each county, which they believed to be valued above its proper valuation. The board in that case undertook to add to the valuation of the sheep in Bingham county an amount sufficient to fix a valuation thereon at the sum of $2.50 per head. In like manner they undertook to add to the valuation of the cattle of said county, for purposes of taxation of the same, a percentage of 10 per cent. on the assessed valuation thereof, as returned by the assessor of said county. They also undertook to order and adjudge that the Utah & Northern railway. from Pocatello northward to the state line between Idaho and Montana, should, for the purpose of taxation, be a branch road, and that the valuation thereof should be reduced from eight thousand dollars per mile to five thousand dollars per mile, and also undertook to deduct from the valuation of a part of the Oregon Short Line railway, lying in said county of Bingham, and from a

portion of the Utah & Northern railway, lying south and east of Pocatello, as fixed by the assessor of said county, and not changed by any county board of equalization, the sum of one thousand dollars per mile for each and every mile thereof. The court in that case held correctly, as we think it must be conceded, that under the special restricted authority to equalize valuations between the several counties by adding to or subtracting from the aggregate valuation, as returned by the assessor and county board of equalization, by a certain per centage, no authority could be deduced therefrom authorizing such board to increase or diminish the valuations fixed upon specific classes of property, and hence, we find nothing in that case bearing in any manner upon the principle contended for in the case before us.

The case of *Kimball v. Merchants Savings L. & T. Co.*, 89 Ill. 611, arose under a statute which provided as follows:

"It (the county board) shall ascertain whether the valuation in one town or district bears a just relation to all the towns and districts in the county, and may increase or diminish the aggregate valuation of property in any town or district by adding to or deducting such sum upon the hundred dollars *as may be necessary to produce a just relation between all the valuations of property in the county.*"

It further provided that such board should not in any instance reduce or increase the valuation of all the towns and districts as made by the assessor, except in such manner as might be actually necessary and incidental to a proper and just equalization. The complainant in that case, in the spring of 1887, returned to the assessor of the town of South Chicago a statement of its personal property liable to taxation, and placed upon it a

valuation of five hundred thousand dollars. It was so returned to the county clerk without modification. The county board of equalization added 20 per cent. to the assessed valuation of personal property in the town of South Chicago, but made no changes in other towns. The per cent. added to personal property in South Chicago increased the aggregate value of assessed property in that town over two million dollars, and consequently increased by a large per cent. the aggregate assessed value of the entire property of the county. The 20 per cent. added by the county board to the valuation of the complainant's property increased that valuation to six hundred thousand dollars. The state board of equalization directed that 57 per cent. be added to the assessed value of personal property in Cook county, and thus the valuation of complainant's property was raised by the county board from five hundred thousand dollars to six hundred thousand dollars, and by the state board to nine hundred and forty-two thousand dollars, and upon this latter sum was computed and extended the several kinds of taxes for said year. No question was raised or discussed in the case relating to the action of the state board in raising the assessment 57 per cent. That appeared to be conceded as authorized and legal. The question was in regard to the action of the county board in making the 20 per cent. increase, and that was held to be illegal because of the limitations of the statute upon the powers of a county board.

The court, in its opinion, and distinguishing the case they were considering from a case previously decided by the same court, said:

"The case of *Scammon v. The City of Chicago*, 44 Ill. 269, cited, is not an authority in the case we are considering. . That case arose under a different law—one that conferred power upon the board acting for the purpose of equalizing assessments 'to add to, take from, or otherwise correct and revise the same' without imposing any limitation upon their discretion in the matter."

Construing, the powers of the county board under the statute they were then considering, the court said:

"The powers such boards may rightfully exercise are defined and limits fixed beyond which they may not go. All acts beyond the restrictions are void as being without authority of law."

Each of these cases are dissimilar in almost every feature from the case before us. Each dealt with the powers and functions of minor boards of equalization, (except the Idaho case,) those of counties or cities not possessing final powers of review and correction whose authority to increase or diminish the aggregate of valuations of property for taxation within their respective districts was by statute expressly inhibited, or expressly granted and limited.

The case cited from the Colorado court more apparently bears out the contention of the defendant in error. In that case, 3 Col. 428, it was shown that the state board of equalization for the year 1877, increased the aggregate valuation of the real and personal property of each of twenty counties of the state above the valuation as returned by the several clerks of such counties. That the aggregate of the increase in said twenty counties amounted to upwards of five million dollars. That at the same time they diminished the aggregate valuation of four other counties to the amount of about forty-nine

thousand dollars; that they made no changes of the valuations of the property of the other counties of the state; that the net increase of the aggregate valuation of all the counties of the state above the aggregate valuations returned by the clerks of the several counties was about five million dollars.

The constitution of the state of Colorado defined the duties of the state board of equalization to be "to adjust and equalize the valuation of real and personal property among the several counties of the state." It also provided for the election in each county in each alternate year of a county assessor, thus making the assessor of taxes a constitutional officer, and the statute of the state provided for the election of a county assessor and defined his qualifications and duties. It also provided that the county commissioners of each county should constitute a board of equalization for the *"correction and completion"* of the assessment rolls, with power to supply omissions in said rolls, and for the purpose of equalizing the same to increase, diminish or otherwise alter or correct any assessment or valuation. It constituted such board a *quasi* court to hear any and all complaints with sole power to adjust and correct the assessment rolls as in their judgment they might deem proper and right. It constituted such board a board of appeals and review for the purpose of ascertaining, determining and fixing the value of taxable property in each county in the state as a basis of taxation. After reviewing the constitutional and various statutory provisions of the state relating to the assessment and valuation of property for taxation, that court said:

"Looking, then, to the provision of the constitution and the statute, we are clearly of the opinion that the power to fix and determine the valuation of taxable property is lodged by them in the assessor and that, when they have, under the law, performed this duty and exercised this power that the sum of the valuation of the several counties, so by them found, must be taken as the aggregate valuation of all the property in the state, and is conclusive and final as against the state board of equalization. The state board may, for the purpose of adjusting and equalizing, increase the aggregate valuation of one county, and decrease the aggregate valuation of another, but they have no power to increase the sum of all the valuations of the several counties of the state. That aggregate valuation has been found for them, and fixed by the authorities, and in the mode prescribed by law. This view is not only sanctioned by the force of the general provisions of the statutes considered as a whole, but, also, by the phraseology of the sections under consideration. The board is to adjust and equalize the valuation. This term, valuation, here imports values already estimated and fixed, and must be referred for the measure of its force and meaning to the mode prescribed by law for estimating and fixing valuations. The aggregate material with which the board can deal is thus limited. They may adjust and equalize it among the several counties, but they can not add to its volume."

It is not necessary that we should dissent from the reasoning or conclusion of the learned court in that case in order to arrive at a different result in the case we are considering. The court found sanction for its views in that case in the peculiar provisions and phraseology of the statute which they were construing. The section of the Colorado statute creating boards of county equalization and defining their duties, is peculiarly different from

ours; there the board was created *"for the correction and completion of the assessment rolls,"* with power to supply the omissions in the case, and for the purpose of equalizing the same, *"*to increase, diminish or otherwise alter and correct any assessment or valuation."

The statute contemplated but one assessment for the state and local taxes. The action of the county board was final as to local taxation, made final by express statutory terms. The state board was created to adjust and equalize.

For that purpose the board was required by statute, (General laws of Colorado, sec., 42, page 756,) to examine the various assessments *as far as regards the state tax,* and equalizing the rate of assessment of the various counties whenever they are satisfied *that the scale of valuation has not been adjusted with reasonable uniformity* by the different assessors. By sec. 43, of the same, the board is required to ascertain whether the "valuation of real estate in each county bears a fair relation or proportion to the valuation of all other counties in the state, and on such examination they may increase or diminish the aggregate valuations of real estate in any county as much as in their judgment *may be necessary to produce a just relation between all the valuations of real estate in the state,* but in no instance shall they reduce the aggregate valuation of all the counties below the aggregate valuation as returned by the clerks of the several counties."

It is obvious that a much greater authority and finality of action was conferred upon the county boards of equalization by the Colorado statutes than is conferred upon the same boards by the statutes of this Territory,

and it is equally obvious that the powers and duties of the state board of Colorado, as limited and restricted by statute, are entirely dissimilar from those of the territorial board of this Territory. True the general definition of their duties are substantially the same. In our statute "to examine the various county assessments and to equalize the same." In the Colorado constitution "to adjust and to equalize the valuation of real and personal property among the several counties of the state." Our territorial board is authorized to find the per centage that must be added to or deducted from the assessed value of each county and to order the per centage so found to be added to or subtracted from the assessed values of each of the various counties of the Territory" to be added to or deducted from the assessed value of each county. The natural construction of this language would authorize the per centage which the board should find proper to be added to the assessed value of each or every county in the absence of any inhibition against increasing or diminishing the aggregate of assessed value. We think this was the intention of the legislature. Had they intended to vest the board with power to equalize only in the sense of distributing equally every county in the Territory, or to be subtracted from among the several counties their proportion of the aggregate valuation returned, this would necessitate both increase and decrease, and the legislature would have used language more apt to express such limitation or purpose. Under the Colorado statutes the board dealt only with the *"scale of valuation."* They were only authorized to act when they were satisfied that the *"scale of valuation had not been adjusted with reasonable uniformity "*

by the assessors.    In this Territory, the board, we think, is authorized to act, not on the scale of valuation as returned, and for the purpose of securing uniformity in such scale, but upon the valuation for the purpose of securing an honest and uniform valuation of property for taxation.    That honest and uniform valuation which the law expressly demands, that is, its assessment and valuation at its true cash value.    The board of equalization found on examination that property in Kingfisher county had been honestly assessed and returned at its true cash value.    They further found that in every other county of the Territory property had been assessed and returned with valuations fixed at from 5 to 75 per cent. below the true cash value, and they ordered that per centage to be added to the return valuation of each of the counties, except Kingfisher, that would make the assessment the true value, and thus equalize the valuation of all the counties upon the basis of the requirement of the law.    In this, we think, they were acting within the scope of their authority.    They might have reduced the valuation of property in Kingfisher county by a few hundred thousand dollars, or by a million, and distributed that amount among other counties and thus equalized and made uniform the valuation of the several counties, but, we think, that is not the equalization that is contemplated by law; that that which is contemplated is that all property shall be assessed at its true value, and that when it is so assessed, and then only, can there have been a proper equalization.

We are supported in this conclusion we have arrived at in this case by the authority of *Black v. McConigle*, 103

M'ssouri, 70. In that case the county board of equaliza-·
tion of Knox county, for the year of 1888, made the fol-
lowing order:

"Ordered by the board of equaltization that they have,
and do hereby, equalize the valuation and assessments on
all real estate in the county of Knox, and in the various
townships therein, taking the assessed valuation of real
estate in Center township as a basis, and do hereby equal-
ize and raise the valuation of all real estate in the follow-
ing townships."

Then follows a list of the other nineteen townships of
the county with the increase ordered varying from 35 to
50 per cent. It was asserted that this was beyond the
authority of the board, as in this case it was insisted that
one township or taxing district could not be taken as a
basis, and the assessment of all the other townships or
districts raised to that basis, thus increasing largely the
aggregate of the valuation of the county; an injunction
was brought to restrain the collection of the excess of
taxation resulting therefrom. In this case Mr. Chief
Justice Black, says:

"The first contention of the appellant is that the action
of the board in raising the assessed values of real estate
in all the townships, except one, by a single order on a
per centum basis, is illegal and void. The propositions
contained in this objection must, of course, be determined
by the statute. · Section 6672 Rev. St., 1879, gives to the
board power 'to hear complaints, and to equalize the val-
uation and assessments upon all real and personal pro-
perty within the county;' and it is then made the duty of
the board 'to equalize the valuations and assessment of
all such property both real and personal, so that each
tract of land shall be entered on the tax-book at its
true value.' * * . The law, however, clearly contem-
plates that all property shall be assessed at its true

value, and if, in the opinion of the board, this has not been done, then the assessment may been increased so as to comply with the spirit and intention of the law. Where the lands in one township have been assessed at their true value, and those in another township have been assessed at a uniform lower rate, then the assessed value of the lands in the latter may be brought up to the standard of the former, and that is what appears to have been done in the present case. In such a case it is not necessary to specify each parcel of land thus increased. It is sufficient to increase the assessed value of all the lands in the particular township by one order; and this increase may be made on a per centum basis." (With the support of authorities.)

In view of the act of congress which prohibits any political or municipal corporation, county or other subdivision, in any of the territories of the United States, from becoming indebted in any manner, or for any purpose, to an amount in the aggregate, including existing indebtedness, exceeding 4 per centum on the value of the taxable property within such corporation, county or subdivision, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness, and declaring all bonds and obligations in excess of such amount given by such corporation, county, etc., void, and in view of the fact that subsequent to the making of the assessment complained of in this case, and prior to the commencement of this action, many of the counties and municipal corporations therein of this Territory had, in good faith, and for proper public purposes, relying upon the validity of such assessment, increased their bonded and other obligations and indebtedness to an amount in excess of 4 per centum of the value of the taxable property within such county or municipal cor-

porations, as the valuation of such property was assessed and returned by the county boards of equalization of such counties for taxation for the year 1895; and that parties not parties to this record have, in good faith, and for valuable considerations, before the commencement of this action, became purchasers and holders of such indebtedness; this court, having regard for public honor, faith and credit, can not consent that the ordinary and common rules for construing a public statute should be violated or strained, and clearly expressed legislative intent be disregarded, when such departure from established rules of interpretation would clearly result in the violation of private rights, and the impairment of public faith, and might seriously impair the usefulness of territorial, county and municipal governments by depriving them of the just revenue necessary for a proper discharge of their functions.

We hold that the statute creating the territorial board of equalization conferred upon that board authority to review and correct the valuations of property for taxation returned to them by the county clerks of the several counties of the Territory, and to equalize such valuation upon the basis of the true cash value of the property, and that they may lawfully increase the aggregate of valuation of property in the several counties of the Territory returned by the said several clerks of the several counties; that the several acts of said board complained of in the petition in this cause was within the jurisdiction of said board, and authorized by law.

That the taxes, the collection of which is sought to be enjoined, were assessed and levied according to law.

The judgment of the court below will be reversed and the cause dismissed.

Bierer, J., having presided in the court below not sitting; Dale, C. J., and Scott, J., concurring; McAtee, J., dissenting.