## *In re* APPEAL OF McNEAL.

No. 3357.    Opinion Filed November 16, 1912.

(128 Pac. 285.)

1. **TAXATION** — Equalization—Power of State Board.    Assuming that that portion of section 1, art. 3, c. 28, Sess. Laws 1899, limiting the power of the State Board of Equalization to the valuation as returned by the several county boards of equalization, to have been valid when passed, and not repugnant to the Constitution, nor locally inapplicable, and hence was brought over, extended to, and remained in force in the state of Oklahoma, yet, being in conflict with section 1 of article 7, c. 38, p. 599, Sess. Laws 1909 (section 7620, Comp. Laws 1909), the same was repealed thereby.

2. **SAME.** Under section 21 of article 10 of the Constitution (section 286, Williams' Ann. Const. Okla.), it is made the duty of the State Board of Equalization to adjust and equalize the valuation of the real and personal property of the several counties in the state; and under section 1 of article 7, c. 38, p. 599, Sess. Laws 1909 (section 7620, Comp. Laws 1909), it was made its duty ''to equalize, correct and adjust the same as between the counties by increasing or decreasing the aggregate assessed value of the property or any class thereof, in any or all of them, to conform to the fair cash value thereof,'' and its action thereunder is not void and unconstitutional for the sole reason that in thus equalizing, adjusting, and correcting the various assessments it raised the valuations of real and personal property in all of the counties of the state, thereby increasing the aggregate assessment as returned to it by the various county clerks.

3. **SAME.** Section 1 of article 7, c. 38, p. 599, Sess. Laws 1909 (section 7620, Comp. Laws 1909), providing, ''it shall be the duty of said board [State Board of Equalization] to examine the various county assessments and to equalize, correct and adjust the the same as between the counties by increasing or decreasing the aggregate assessed value of the property or any class thereof,'' is not repugnant to nor in conflict with section 21 of article 10 of the Constitution (section 286, Williams' Ann. Const. Okla.), which provides: ''The duty of said board shall be to adjust and equalize the valuation of real and personal property of the several counties in the state, and it shall perform such other duties as may be prescribed by law.''

4. **SAME.** The action of the State Board of Equalization in equalizing, correcting, and adjusting the various county assessments by increasing or decreasing the value of any or all of the different classes of real and personal property, as the same are provided for by the revenue laws of the state, in order to make their valuation conform to the fair cash value thereof, is valid.

(Syllabus by the Court.).

Turner, C. J., and Williams, J., dissent.

*Appeal from the State Board of Equalization.*

Appeal by J. W. McNeal from the State Board of Equalization. Action of the Board affirmed.

*C. G. Hornor,* for appellant.

*Chas. West,* Atty. Gen., and *W. C. Reeves,* Asst. Atty. Gen., for Board of Equalization.

*Blake & Boys, amici curiae.*

DUNN, J.  This case presents to this court an appeal from the State Board of Equalization on its action in equalizing, adjusting, and correcting the assessed valuation of property of the several counties of the state for the year 1911.  December 1, 1911, appellant filed in this court his petition, which contained the following averments:

"That on or about July 26, 1911, the State Board of Equalization of the state of Oklahoma met at the office of said board, in Oklahoma City, with all members present.  That thereafter, from time to time, and up until the 2d day of October, 1911, said board continued to meet for the purpose of equalizing the values of real and personal property in said state for taxation.  * * *  That at said proceedings said State Board of Equalization raised the values of all real estate and of all personal property in all the counties of the state of Oklahoma from seven hundred eighty-four million five hundred eleven thousand nine hundred sixty-five dollars ($784,511,965.00), as returned by local assessors to the county clerks of the respective counties of said state and by them returned to the Auditor of said state, and to the State Board of Equalization, to the sum of one billion, seventy-five million, seventy-eight thousand, four hundred ninety-six dollars ($1,075,078,496.00).  That in making said general raise the values of all the real estate in all the counties of the state, and also of all the personal property in all the counties of the state, were by said board raised over and above the amount turned in, as aforesaid, by local asessors and thereafter certified to said State Auditor and said Board of Equalization.  * * *  That in making said raises and in all of said proceedings the State Board of Equalization did not adjust and equalize the value of real and personal property of the several counties of the state, but, in effect, assessed said property in violation of the Constitution and laws of the state.  * * *  That in said proceedings the

said Board of Equalization not only raised the valuations of real and personal property in every county of the state, but raised the sum total of said valuation over and above the values fixed by local assessors and turned in to the county clerks, and by them certified to the State Auditor, in the sum of nearly three hundred million dollars, as set out and shown in said transcript, all of which was wrongful, illegal, and without power and jurisdiction on the part of said board so to do."

During the course of the proceeding appellant filed a petition before the said board, objecting to its action in raising said valuations, and by counsel, C. G. Hornor, Esq., appeared before said board in support thereof. On this, his petition in this court.—

"Appellant avers that said Board of Equalization denied his said petition, for the reason and upon the ground, as claimed by them, that they were not, in effect, assessing property in said state, but were adjusting and equalizing the valuations thereof, and that in the said action herein complained of they did not, in effect, assess said property for taxation, but did adjust and equalize the valuations thereof, and that in what they did they were acting, and did act, within the scope of their powers and duties. Appellant avers that there was and is error in the proceedings of said board, in that by what they did, as set out and shown in the transcript, they did not adjust and equalize the values of real and personal property of the several counties of said state, and did in effect assess said values, and did thereby assume the functions and did supersede the officers of the state designated and empowered by law to assess the values of property in said state, and did override and set aside the acts of the legal assessors of the state, and that in all of said matters and things said Board of Equalization did exceed its powers, and that its said actions were unlawful and void."

The prayer was that the action of the state board be vacated and set aside and annulled, and the board be required, by order of this court, to convene, and to proceed to adjust and equalize the valuation of real and personal property of the several counties of the state, as required by the Constitution.

From the foregoing, and from the brief filed in support thereof and the answer brief of the Attorney General representing the state, but one question is presented, to wit: Was the State Board of Equalization empowered by the Constitution and statutes of this state to raise the aggregate of the assessed valua-

tion of the property of the state, as the same was returned by the county clerks of the respective counties of the state to the State Auditor and to the said board? It is the contention of counsel for appellant that the action taken by the board was not "equalization," but was, in fact, a revaluation or reassessment of all property in the state; that the power to assess is not vested in the State Board of Equalization, but is vested solely in the local assessors, who view the property.

Thus it will be seen that herein is rejuvenated the aged question which received the consideration of the territorial Supreme Court in the middle and later '90's, and we are called on in this proceeding to again review the much-mooted question of the power of the tax-assessing, equalizing, and levying officials in this jurisdiction. Considering the question here raised in connection with the history of the territorial legislation and the action of the territorial board thereon, together with the adjudications of the Supreme Court of the territory, and the legislation, both constitutional and statutory, of the state, and giving to it the force to which we deem it entitled, leaves but little necessity, in the determination thereof, for extended consideration of the adjudications of other states.

Section 6 of the Organic Act of the territory of Oklahoma provided against any unequal discrimination in taxing different kinds of property, and that "all property subject to taxation shall be taxed in proportion to its value." The territorial Legislature, in its act of March 8, 1895 (section 1, art. 1, c. 43, p. 215, Sess. Laws 1895), provided for a territorial board of equalization, and that:

"It shall be the duty of said board to examine the various county assessments and to *equalize* the same, and to decide upon the rate of territorial tax to be levied for the current year, together with any other general or special territorial taxes required by law to be levied, and to equalize the levy of such taxes throughout the territory. And shall therefrom find the percentage that must be added to or deducted from the assessed value of each county, and shall then order the percentage so found to be added to or subtracted from the assessed values of each of the various counties of the territory, and shall notify the various county

clerks of the percentage so ordered to be added to or subtracted from the valuation of property in their respective counties."

Under the foregoing Organic Act and statute, the territorial board of equalization undertook to and 'did raise the total assessed valuation of the property of. the territory; and it was held by the Supreme Court of the territory, in the case of *Gray et al. v. Stiles, Treasurer, et al.,* 6 Okla. 455, 49 Pac. 1083, decided September 2, 1897, that under the power given to the said board its sole legal duty was, the aggregate amount of property having been ascertained by the abstract of assessment rolls furnished to the auditor of the territory from the various counties, an ascertainment of the proper percentage which should be added to some counties and taken away from others, in order to place the counties upon an equal footing—the aggregate amount of property remaining the same, except from such slight raising or lowering of the amounts as may be incidental to the operation of equalization of the taxes among the various counties. This case covers nearly 100 pages of the report, and is an exhaustive one on the subject, presenting the best discussion of the law, from the standpoint of the appellant, that is presented in any of the cases. This opinion was prepared for the court by Justice McAtee, who dissented from the previous opinion involving the same question (*Wallace et al. v. Bullen et al.,* 6 Okla. 17, 52 Pac. 954, decided July 17, 1896), in which case it was held:

"The statute creating the territorial board of equalization conferred upon the board authority to review and correct the valuations of property for taxation returned to them by the county clerks of the several counties of the territory, and to equalize such valuation upon the basis of the true cash value of the property, and may lawfully increase the aggregate valuation of property in the several counties of the territory, as returned by the clerks of the several counties."

The petition for rehearing, which was filed to this latter opinion was not decided until June 25, 1898, and in the opinion prepared thereon by Chief Justice Burford, 6 Okla. 757, 54 Pac. 974, the case of *Gray et al. v. Stiles, Treasurer, et al., supra,* was specifically overruled, and the doctrine of the case of *Wallace et al. v. Bullen et al., supra,* adhered to. So it will be seen that the

proposition received exhaustive consideration at the hands of that court. While the doctrine finally adopted by the court did not meet with the unanimous concurrence of all of the Justices thereof, there were but three out of nine who considered it who did not concur therein. The same question was again before that court in the case of *Bardrick et al. v. Dillon et al.*, 7 Okla. 535, 54 Pac. 785. That case involved the duties of the county board of equalization. The statute relating thereto provided that after the returns were made from all the townships, the board of county commissioners should hold a session, at a fixed .time, for the purpose of *equalizing* the assessment rolls in their county between the *several* townships. St. Okla. 1893, c. 70, art. 6, sec. 2. The language of this statute is notedly similar in its phraseology to the language of the Constitution empowering the State Board of Equalization to "equalize the valuation of real and personal property of the several counties in the state." Section 21 of article 10 of the Constitution (section 286, Williams' Ann. Const. Okla.). In defining the meaning of the word "equalize" as there used, and of the authority of the board so empowered, Chief Justice Burford, who prepared the opinion for the court, said:

"This statute prescribes the power of the county board, but makes no provision as to the manner or method in which it shall perform that duty or execute the power; nor does it place any limitation on its power. The board is simply empowered to equalize the various township rolls. Now, what does this word 'equalize' mean? It has no technical or scientific meaning. It is a word used in every-day parlance, and is here used in its common and ordinary sense and acceptation. The purpose of having equalizing boards is that all classes of property, all parts of the taxing district, and all persons owning taxable property may bear equal burdens, and to secure equality, as near as may be, under a general law. In Webster's International Dictionary 'equalize' is defined: 'To make equal; to cause to correspond, or be like, in amount or degree as compared; as, to equalize accounts, burdens, or taxes.' The Century Dictionary and Cyclopedia gives this definition: 'To make equal; cause to be equal in amount or degree as compared; as, to equalize accounts, to equalize burdens of taxes.' The word 'equalize' is not found in the law dictionaries of either Bouvier or Black, but Black defines 'equality' (which is the end to be reached by equalizing) as 'likeness in possessing the same rights, privileges, and immunities, and being liable to the

same duties.' There is nothing in the etymology, origin, or derivation of the word 'equalize' that signifies any such meaning as that contended for by plaintiffs in error; and no lexicologist, philologist, or law writer has ever attempted to impute such meaning to the word. It is the duty of the county board of equalization to examine the tax assessment rolls from all the townships in the county, and cause such assessments to be so adjusted and equalized that the property in each township will bear its equal and just burden of the taxes to be levied upon such assessments, and so that all the taxable property in the county will pay its equal proportion of the public revenues. This power is given the board, and duty imposed upon it by the revenue laws. The statute points out no manner in which this power is to be executed and duty performed; and there is no limitation upon the manner in which the equalization shall be done, except that property shall not be valued above its true cash value. Our statute contemplates that all taxable property shall be valued, for purposes of taxation, at its fair cash value; and all assessing officers and equalizing boards are bound, when performing the duties imposed on them, to keep this fact in view, and not fix such values or make such additions for purposes of equalization as will increase property beyond its fair cash value."

The act of 1895, *supra,* was amended by the territorial Legislature in its act of February 24, 1899 (Sess. Laws 1899, art. 3, c. 28, sec. 1), as follows:

"That the said board of equalization is hereby expressly forbidden to raise or lower the aggregate grand total of the valuations of the taxable property of said territory as returned by the several county boards of equalization."

It is contended that this section of the act was extended to and continued in force in the state of Oklahoma by virtue of the provisions of section 2 of the Schedule to the Constitution. The Attorney General, however, takes the position that the said section was not a valid law of the territory of Oklahoma, for the reason that it was in conflict with section 6 of the Organic Act, which provided that "all property subject to taxation shall be taxed in proportion to its value," and that the territorial Legislature lacked the power or authority to restrain the taxing officers of the territory in any manner, so that in the performance of their duties they might be precluded from placing upon the property returned a valuation approximating its fair cash value;

and, even if this were not true, that it was repugnant to section 21 of article 10 of the Constitution, which provided for a State Board of Equalization, and made it its duty to adjust and equalize the valuation of real and personal property of the several counties of the state. For the purposes of this case, however, it is not necessary for us to determine whether the section was in conflict with the Organic Act of the territory, or repugnant to the Constitution, for the reason that the state Legislature, on March 10, 1909, by section 1 of article 7, c. 38, Sess. Laws 1909 (section 7620, Comp. Laws 1909), provided that:

"The Governor, State Auditor, State Treasurer, Secretary of State, Attorney General, State Examiner and Inspector, and president of the Board of Agriculture, shall constitute the State Board of Equalization, and said State Board of Equalization shall hold a session at the capital of the state commencing on the third Monday in June of each year. It shall be the duty of said board to examine the various county assessments and to equalize, correct and adjust the same as between the counties by increasing or decreasing the aggregate assessed value of the property or any class thereof, in any or all of them, to conform to the fair cash value thereof as herein defined, and to order and direct the assessment rolls of any county in this state to be so corrected as to adjust and equalize the valuation of the real and personal property of the several counties of this state."

This act, which was passed prior to the action of the State Board of Equalization of which complaint is here made, is in direct and flat conflict with the section in question. It is to be noted that the said board is therein empowered to increase or decrease "the aggregate assessed value of the property or any class thereof, in any [county] or all of them." This being the latest expression of the legislative will, and being in conflict with the previous one, must prevail. The reading of this act in the light of the previous adjudications in this jurisdiction of the power possessed by the equalizing boards where given authority to equalize leaves nothing less to be gathered from it than a specific present intention on the part of the Legislature to preclude and exclude any such limitation as insisted upon. For clearly, under the authority granted by vesting equalizing power in boards, as the same had been defined in this jurisdiction, no specific grant

was required at the hands of the Legislature to authorize the board to increase the aggregate valuation; for the courts had finally decided that this authority existed by virtue of the power to equalize, where the cash value was the standard. Herein is the certain effort of the state Legislature to restore the law as it was before the act of February 24, 1899, was passed. That law provided that the aggregate value should not be raised; while this law specifically provides that it may be, just as the courts had previously held was permissible under the language used.

In this connection, also, consideration may be given to the argument made by counsel that, in order to equalize, it was the duty of the board to take some particular county in the state, whose valuations appeared to be approximately intermediate, and then reduce the valuations of all the counties which were in excess of that, and raise the valuations of all the counties which were less, to that standard. In other words, counsel's contention is that the valuation of some particular county should be taken as the standard, and that to take any other standard was inequitable and unjust. This argument might have had great weight with the framers of the act; but it falls when made to a court called upon to construe it. The Constitution provides (section 8 of article 10; section 273, Williams' Ann. Const. Okla.) that "all property  *   *   *   shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale." And section 1 of article 7, c. 38, Sess. Laws 1909 (section 7620, Comp. Laws 1909), makes it the duty of the said Board of Equalization to so equalize the property of the different counties by increasing or decreasing the assessed value thereof "to conform to the fair cash value thereof." This fair cash value is the standard fixed by the Constitution and the Legislature, and not some particular county's valuation. Herein is just the distinction which exists between this case and the case of *People ex rel. Crawford v. Lothrop,* 3 Colo. 428, at page 462, which counsel press so strenuously upon our attention. The constitutional provision of Colorado had the same phraseology in reference to the State Board of Equalization, to wit, that its powers were to adjust and equalize, but the standard for equal-

izing purposes was not fixed thereby; and it is to be noted that the authority given in the general laws there quoted (section 42, p. 766) was to "examine the various assessments as far as regards the state tax, and equalize the rate of assessments in the various counties whenever they are satisfied that the scale of valuation has not been adjusted with reasonable *uniformity* by the different assessors." This is followed by section 43 of the act, which then provided that the board should ascertain whether the "valuation of real estate in each county bears *a fair relation or proportion to the valuation of all other counties of the state,* and on such examination they may increase or diminish the aggregate valuation of real estate in any county as much as in their judgment may be necessary *to produce a just relation between all the valuations of real estate* in the state, but in no instance shall they reduce the aggregate valuation of all the counties below the aggregate valuation as returned by the clerks of the several counties." Under this authority the State Board of Equalization assumed to increase the aggregate valuation of all of the property in the state; and the court, in our judgment, under these statutes, correctly held that such power was not vested in the board. It will be noted that the specific distinction between that case and the one at bar is that in Colorado the standard was the valuation of the counties of the state as returned to the board, while in Oklahoma there is but one standard, which is the one fixed by the Constitution and statute, to wit, the fair cash value of the property, and this must necessarily be without reference to whether this has been attained by one county or all of them or none of them. If the valuation as returned to the State Board of Equalization is in excess of the fair cash value of the property in the state, it is the duty of the board to lower it; and if the valuation is less than this it is its plain duty to raise it. This, to us, seems the end of the entire matter.

The duty of the State Board of Equalization of the state of Utah was to "adjust and equalize the valuation of the real and personal property among the several counties of the state," being virtually the same as here. The power vested in the State Board of Equalization under this language was, by Chief Justice Zane,

in the case of *Salt Lake City v. Armstrong,* 15 Utah, 473, 49 Pac. 641, stated to be as follows:

"The last section makes it the duty of the county board to adjust and equalize the valuation of the real and personal property within their respective counties, without prescribing the mode to be adopted. This leaves the board the discretion to adopt any reasonable and just method; and if, upon an examination and investigation of the assessment, the board should be of the opinion that the real estate in a particular locality is too high, and that in other localities the assessment is too low, it would appear to be a reasonable exercise of its authority to prescribe the localities, and raise or lower the valuation, so as to equalize the assessment in such districts. * * * It has the right to determine the value of property, and, if necessary for the purpose of equalization, may raise the valuation of one district, and lower that of another, even though by such action the total valuation of the property of the county may be increased or decreased. *State ex rel. v. Thomas et al.,* 16 Utah, 86 [50 Pac. 615]."

This same language occurs in the statutes of Missouri, and the word "adjust" is construed in the case of *Washington County v. St. Louis & Iron Mountain R. Co.,* 58 Mo. 372, 376, to mean that if the reported estimate is too high or too low "it must be 'adjusted,' which, according to the received definition, means 'fitted,' 'made accurate.' The exact relation which the property bears to a money standard must be so fixed."

And as a finality, as was said by Chief Justice Burford, in the case of *Wallace et al. v. Bullen et al.,* 6 Okla. 17, 52 Pac. 954:

"The general scope of the jurisdiction and powers of the taxing authorities is to impose taxation upon property assessed at its true cash value, and at a rate not exceeding the maximum fixed by law; and when the authorities have proceeded and acted within the scope of their authority as thus defined, and property has not been valued for taxation beyond its true cash value, or a greater rate of taxation levied upon such value than that authorized by law, the owner has not been injured and cannot be heard to complain, provided his property has been taxed equally and uniformly with other property in the taxing district."

The limits expressed therein are the limits fixed by the Constitution. Every taxpayer is entitled to have his property assessed equally and uniformly with the property of every other taxpayer. If his property is taxed at its fair cash value estimated at the price

it would bring at a fair voluntary sale, and the property of all other taxpayers is so assessed, then the uniformity sought by law has been attained; but if his property is assessed at less than this, and the balance of the property conforms thereto, then an injustice has been done the balance of the taxpayers and the state. This limit upon the assessment is the one provided for in the Constitution, as is also the limit of the levy which may be assessed. Section 9 of article 10, Constitution (sec. 137, Williams' Ann. Const. Okla.). Beyond the limit of fair cash value and the limit as to the rate of levy the taxing authorities of the state cannot go; and wherever they seek to do so the law has provided every taxpayer a remedy by appeal, as provided in chapter 87, p. 173, Sess. Laws 1910.

The question considered and decided above is the only question which is presented and argued by the parties to this cause. In the brief of the *amici curiae,* however, other propositions are raised and presented, and by reason of the public importance of the question and the fact that the case presents an appeal from the action of the State Board of Equalization, and it is tried *de novo* upon the same questions as were there presented, we have considered and will decide the objections raised.

In addition to insisting that the contentions of counsel for appellant are correct, it is contended that the act of the Legislature (section 7620, *supra*) is unconstitutional, in that it adds to the power and authority granted the State Board of Equalization by the Constitution the authority of "increasing or decreasing the aggregate assessed value of the property, *or any class thereof,* in any or all of them [the counties] to conform to the fair cash value thereof," because the Constitution and statute of the state recognize but two classes of property, real and personal; and that the State Board of Equalization, in its process of equalizing, is limited to a consideration of the total value of the property of a county as a unit, or that it is limited to a consideration of real property as one class, and personal property as another; and that these could not lawfully be divided into classes, for the purpose of adjusting, equalizing or correcting the value thereof. It is true that under section 7205, Comp. Laws 1909,

property is classified as either real or immovable, or personal or movable. This is in a chapter of the statutes which relates to property generally, and refers to the ownership thereof, including many of the rights growing out of the same. The subject which we are discussing relates to taxation and revenue.

Section 7562, Comp. Laws 1909, provides that on or before the 1st day of January of each year the State Board of Equalization shall provide, for the use of the local assessors, suitable blank forms for listing and assessing all property, and then sets forth all of the different classes into which this property is to be divided for such purposes. For instance, under section 2, the list of taxable property assessed to each person shall, as to his lands, be described by township, range and section, or by lots and blocks, if in a city or town; and personal property is divided into more than 25 classes, under which there is required to be listed in one class the number of horses, in another the number of mules and asses, and, again, the number of cattle over six months old, also the number of sheep and goats over three months old, also sewing machines, in another watches and clocks, also the number of pianos, organs, and other musical instruments. Office furniture constitutes another, and the value of agricultural tools, implements, and machinery yet another, and so on through the entire list of property which may be owned or within the control of any person, and subject to taxation. In addition thereto, as showing the complete control vested in the boards of equalization, state and county, over the different classes, and showing that these may be varied and changed every year at their discretion, it is provided "that the above list may be extended at the discretion of the State Board of Equalization or board of county commissioners, so as to obtain such facts as they may deem advisable."

In addition thereto, and as disclosing in a measure the intention of the Legislature in passing the act containing the language to which the attack is directed, section 7563, Comp. Laws 1909, provides for a demand by the assessor of a statement, under oath, of the persons whose duty it is to assess such property, and fixes as his duty that he "shall set out in such sworn statement an itemized account of all classes of property, subject by

law to assessment, by him so held or controlled." Further on in the same section it provides that on a refusal to so list the assessor shall estimate the "number, amount and cash value of all the several species of property. required." And section 7566, *Id.,* again uses the following language: "And the assessor shall seek to have assessed the same classes of property at a uniform value throughout the county." Section 7559, *Id.,* provides for the making up of the assessment roll, and again refers to the property included therein as "the several species" thereof. Herein it is noted that the division of taxable property in the scheme of legislation relating thereto is not confined to simply the two grand divisions defined as real and personal. Two entirely different subjects of legislation were being considered on the different occasions, and it would be manifestly improper, in our judgment, to limit the classification contained in one to that of the other.

Nor can we be unmindful of the language of the act. The power to equalize, correct, and adjust was *not* by increasing or decreasing the aggregate assessed value of the property, or *either* class thereof, but was of *any* class thereof, indicating manifestly that it was not intended to restrict the classification to just real and personal property. A definition of the word "any," as given by Webster's New International Dictionary, is, "One indifferently out of a number," and, with reference to whether more than two was intended, it is explained:

"As applied to individuals, 'any' was formerly (and in dialect English is still) used pronominally for one of two, but in educated usage *any* and *any one* are now applied only to one of three or more, *either* and *neither* being used in referring to one of two." ·

But it is contended that the authority of the Legislature to prescribe other duties for the State Board of Equalization, as provided for in the Constitution, did not extend to the point of authorizing it to equalize the valuations between any of the classes of either real or personal property, because therein it is provided that the duties of the board shall be "to adjust and equalize the valuation of real and personal property." And it is contended that this language constitutes a limitation upon the au-

thority of the Legislature to further extend the power of the board. The language of the section (section 286 [section 21, art. 9], Williams' Ann. Const. Okla.), so far as pertinent hereto, is as follows:

"The duty of said board shall be to adjust and equalize the valuation of real and personal property of the several counties in the state, and it shall perform such other duties as may be prescribed by law."

The duty of the board is, as we have seen, to equalize, with the fair cash value of the property for its standard. This is its only limitation, and thereunder to attain this it had authority to divide the property of the state, real and personal, into different classes for the purposes of taxation. This must be so, for it was simply a method laid down by law for the guidance of the taxing officers, or, in other words, it was prescribing by law other duties for the board to perform; and in either event we have no doubt that the Legislature had the full authority to prescribe the same. We have been cited to no authority which would deny it, and we know of none. Therefore we hold the Legislature had the power to enact this law extending the duties of the board in question to the equalization of the different classes into which the property of the state was divided for assessing purposes.

We have had our attention called, in this connection, to the case of *State v. Thomas,* 16 Utah, 86, 50 Pac. 615, but, in our judgment, it touches the question only incidentally. Section 2 of article 13 of the Constitution of Utah provides:

"All property in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed in proportion to its value, to be ascertained as provided by law."

An act of the Legislature provided that:

"When, after a general investigation by the board, the property is found to be assessed above or below its full cash value, the board may, without notice, so determine, and must add to or deduct from the valuation of: (1) the real estate; (2) improvements on such real estate; (3) the personal property, except money, such per centum respectively as is sufficient to raise or reduce it to its full cash value."

Dealing with this alleged conflict, the court said:

"It is contended by one of counsel for the defendant board that this section is in excess of constitutional authority, and therefore void; and reference is made to the provision of section 2 of the Constitution, hereinbefore considered, as the one with which it is in conflict. We are unable to see in what respect section 83 is in conflict with that provision of the Constitution which we have construed in connection with section 3 of that instrument, as providing for the assessment of all taxable property at its full cash value. Section 83 provides likewise. The Constitution is silent as to the classification of taxable property for the purposes of taxation. Section 83 provides for such classification, and how the valuation may be increased or reduced. This was a proper exercise of legislative power, in the absence of any constitutional limitation; and the section is valid, notwithstanding that it excepts money from its operation. That exception does not invalidate teh statute, because, in respect to taxation, money is the constitutional standard of all values. The valuation of all property shall be 'according to its value in money' is the mandate of the fundamental law."

Also, our attention has been called to the case of *State ex rel. v. Vaile,* 122 Mo. 33, 26 S. W. 672, wherein the State Board of Equalization, by order, provided that in Jackson county the valuation of lands should be reduced 25 per cent. and town lots 50 per cent. This it was held to be without power to do, for the reason that section 7514, Revised Statutes 1889, provided that the board shall equalize the valuation of the property "among the respective counties in the following manner, to wit: First, they shall add to the valuation of the property, real or personal, in each county, which they believe is valued below its true value in money, such per centum in each case as will raise it to its true value; second, they shall deduct from the valuation of the property, real or personal, of each county which they believe to be valued above its real value in money, such per centum as will reduce the same in each case to its true value." It is to be observed that this statute is dissimilar to the statute under consideration in this case, for the reason that the duty of the board is specifically limited to raising or lowering either real property or personal property, and that there was not vested in it the authority to raise or lower the classes of either real or personal property, which power is specifically conferred upon the State

Board of Equalization by the statute in question. Discussing this statute, the Supreme Court of Missouri says:

"The meaning of this statute, it seems to us, is clear. It gives the board power to equalize the value of property, real or personal, among the counties; but it gives that board no power to go into any county and equalize the value of parcels or *classes* of real estate therein. That is a matter confided by the law to the county board of equalization. The powers of the two boards are entirely different. The state board deals with the entire county assessment on real as on personal property, while the county board deals with individual assessments. The state board may, no doubt, raise or decrease by a uniform per centum the valuation on all lands in a county, without changing the valuation on personal property, or it may raise or decrease by a uniform per centum the valuation of all personal property in a county, without disturbing the valuation of real property; but it has nothing to do with adjusting the values of different parcels of land in the same county. Inequalities between parcels of land or *classes* of land in the same county are matters within the exclusive jurisdiction of the county board. The state board has nothing to do with them."

Just the power as to classes of property which the State Board of Equalization lacked in Missouri has been specifically conferred upon the State Board of Equalization of this state. The Missouri board found on an investigation that the lands of Jackson county had been assessed at 25 per cent. in excess of the amount which they should have been assessed, and that the town lots had been assessed 50 per cent. in excess of that amount, but it lacked the power to equalize and equitably adjust this difference. Therefore its action in endeavoring to do this was held void. The consequence was an injustice or inequality and lack of uniformity in the taxation of this property. This was just the situation and defect which would exist in our law, except for the act here inveighed against; and it was to correct the manifest certainty of inequality inherent in the administration of such a system that the Legislature of the state wisely provided and invested the state board with the power to equalize between the valuation of classes of property, where the same was unequal. For instance, if the board should discover that in some county of this state the value of farm lands was placed at their fair

cash value, and that the town lots had been assessed at but one-half of their fair cash value, it has the power without disturbing the farm values, to raise the valuation of the town lots, and thus bring about uniformity in the burden of taxation between the owners of these two classes of property. If the contentions of counsel were to be sustained, it would be necessary, in order to impose a just proportion of the burden of taxation upon the owners of town lots by increasing them to their fair cash value, to, at the same time, increase the valuation of farm lands 50 per cent. above their fair cash value. It can be seen at a glance that a system which would require this would be an iniquity, which should not be permitted to continue. So it is with the equalization between classes of personal property. Under previous practice, and under the one which obtained in Missouri, in order to raise the valuation of any particular classes of personal property, so that their owners might pay their just proportion of taxes, it was necessary to raise the valuation of all classes of personal property. The result was that in every instance where money or credits were assessed, in order to raise the valuations of other personal property to a proper basis, and this was done, their owners were driven to the courts for relief, or compelled to suffer an unjust extortion. The operation of such a system was particularly severe upon the small taxpayer, for the reason that in virtually every instance the burden of litigating for his rights was heavier than the one which he bore in suffering himself to be the victim of an unjust assessment. As we view it, the Legislature of this state sought to correct just the evils which existed in the old system, and under the scheme here worked out there has been brought about a better and a more uniform assessment and more equitable distribution of the burdens of taxation among the people who must bear them.

Nor does this action on the part of the State Board of Equalization result in a new assessment of property. If a board of equalization is powerless to fix a different valuation upon the property than that returned to it, then it would be without power to accomplish equalization, because, in order to equalize in Oklahoma, it is necessary that the power exist to fix a valuation on the

property returned at its fair cash value. And where this is done by the State Board of Equalization, and its valuation exceeds this sum, the taxpayer has a full, specific, and definite remedy; and it is worthy of note that no point is made that the equalization of which complaint is here made has resulted in raising the property above its fair cash value. Necessarily in Oklahoma, as in every other state, an exact and equal distribution of the burden of taxation is not effected. It has never been since government was instituted, and probably never will be. There will never come a time when some of the taxpayers do not pay more than they should, and when others do not pay less. As was said by Justice Field, in *Stanley v. County of Albany,* 121 U. S. 535, 7 Sup Ct. 1234, 30 L. Ed. 1000:

"Absolute equality and uniformity are seldom, if ever, attainable. The diversity of human judgment, and the uncertainty attending all human evidence, preclude the possibility of this attainment. Intelligent men differ as to the value of even the most common objects before them—of animals, of houses and lands in constant use. The most that can be expected 'from wise legislation is an approximation of this desirable end; and the requirement of equality and uniformity found in the Constitutions of some states is complied with when designed and manifest departures from the rules are avoided."

But the system which enables a State Board of Equalization to distinguish between classes of property, some of which have been assessed too high, and others of which have been assessed too low, and bring them all to a common standard, is an advanced step over the system which previously existed in this jurisdiction, and which exists in a number of states. That it has not and will not make mistakes is not assumed nor claimed; no one expects this; but that its errors will be less in degree and number than they would be if it lacked this power every one must concede.

The strictures indulged in by counsel do not, for the most part, reach the question of the constitutionality of the law, but it is contended that it will work inequitably; that it is cumbersome; and that the state board cannot know the correct valuation to be placed upon property as well as the local assessors and

boards.    All of this may be true, but it is the method which has been provided by the Legislature; and that department of government, and not this, has the power to change it.    Until it does, it is our duty to declare it as it is written.    We are forbidden to declare a law unconstitutional simply for the reason that we do not agree with its policy.    The Legislature of this state has said in its solemn enactment that the State Board of Equalization is invested with just the authority and power we have here sustained, to wit, that it may increase or decrease the aggregate assessed value of the property, or any class thereof, in any or all the counties, to conform to the fair cash value thereof; and that the Legislature possessed the constitutional authority to so vest the board, we entertain no doubt whatever.

We therefore say, as our judgment herein, the valid authority of the State Board of Equalization extended to the point, wherein in its judgment the situation justified it, of increasing or decreasing the aggregate valuation of property of the state as returned to the Auditor and to it by the different county clerks of the state, and that the Legislature had full power to pass the section of the act of March 10, 1909 (section 7620, Comp. Laws 1909; article 7 of chapter 38, p. 599, Sess. Laws 1909), and that under and by virtue of the terms thereof the State Board of Equalization was authorized to raise or reduce the values of the different classes of property as the same were designated in the laws relating to taxation, and that, as its acts are not otherwise assailed, the action of the board must be and is affirmed.

HAYES and KANE, JJ., concur; TURNER, C. J., and WILLIAMS, J., dissent.