STATE of Oklahoma ex rel. William F. "Bill" POULOS, Petitioner,

v.

STATE BOARD OF EQUALIZATION FOR the STATE OF OKLAHOMA, The Honorable George Nigh, Chairman, The Honorable Spencer Bernard, Member, The Honorable Leo Winters, Member, The Honorable Jack Craig, Member; and The Oklahoma Tax Commission, Respondents.

No. 57218.

Supreme Court of Oklahoma.

May 25, 1982.

As Corrected June 14, 1982.

Buford & Percival, Manville T. Buford, John F. Percival, Oklahoma City, for petitioner.

Charles Elder, Elder, Mantooth & Haxel, Purcell, for respondent, State Bd. of Equalization.

Marjorie Patmon, Gen. Counsel, Donna E. Cox, Oklahoma City, for respondent, Oklahoma Tax Com'n.

Russell Fletcher, Oklahoma City, for intervenor, Tax Equality Committee.

Cathy Stocker, Jones & Gungoll, Enid, for amicus curiae, League of Women Voters of Oklahoma.

LAVENDER, Justice:

Original jurisdiction of this Court is sought to be invoked under authority of Art. 7, § 4 of the Oklahoma Constitution, which provides:

"The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law."

The parties designated as Respondents are the State Board of Equalization for The State of Oklahoma (Board), its members, and The Oklahoma Tax Commission (Commission).

Petitioner brings this action in his capacity as a citizen, resident, and taxpayer. At issue is the constitutionality of the system

of ad valorem property taxation as implemented by the State Board of Equalization for the State of Oklahoma, and the Oklahoma Tax Commission, as the same affects the valuation and assessment of property taxes in all of the 77 counties in Oklahoma.

Frequent reference will be made herein to *State ex rel. Poulos v. State Board of Equalization*, Okl., 552 P.2d 1134 (1975), *State ex rel. Poulos v. State Board of Equalization*, Okl., 552 P.2d 1138 (1976), to the case now pending before us, and to *Cantrell v. Sanders*, Okl., 610 P.2d 227 (1980). For brevity, these cases will be referred to respectively as *Poulos I, Poulos II, Poulos III*, and *Cantrell*.

In *Poulos I*, we held that "the matter presented is publici juris, and of immediate concern to all taxpayers." We assume original jurisdiction and proceed to consider the case on the merits.

The exhibits filed with this Court have, as reconciled, been acknowledged by the parties to be true and correct copies of what they purport to be, and are factually correct as to the studies and findings therein set forth.

In *Poulos I*, this Court in unequivocal language pointed out that it is the mandatory duty of the Board to adjust and equalize the valuation of real and personal property of the several counties in the State; that a system which does not equalize ad valorem assessments throughout the state is unfair and invidiously discriminatory; and that it is the manifest intention of the Oklahoma Legislature to equalize ad valorem assessments so that every parcel and item of taxable property in the state will be assessed at the same percentage of its value.

In *Poulos II*, this Court rejected a proposed "Plan of Compliance" because of a variance between 8% and 17.91% which permits inequality of valuation among the counties of this state. The Court directed by writ of mandamus that the Board satisfy its constitutional and statutory duty as set forth in *Poulos I* "by setting a definite percentile equality applicable to all counties . . ." with permissible interim variations not to exceed three percentage points above or below the assessment rate, but with complete uniformity to be achieved by the Board within the three year period following the *Poulos II* decision.

In *Cantrell*, we held that it is the statutory duty of the county assessor to set an assessment percentage uniformly applicable to all real property within the county. The basis for our conclusion was all real property within the county constitutes but one "class of subjects," and the mandate of Art. 10, § 5 of the Oklahoma Constitution that taxes be "uniform upon the same class of subjects" must be followed.

*Cantrell* further held that Art. 10, § 8 of the Oklahoma Constitution, as it was amended in 1972, changed the method of valuing real property for tax assessment by prescribing that all property taxable ad valorem must be valued at its "fair cash value"—that is, its market value, EXCEPT:

1. No real property shall be assessed for ad valorem taxation at more than 35% of its *use value*, as opposed to its market value, that is, the tax value is to be determined by the value of the real property as actually used, or was previously classified for use during the calendar year next preceding the first day of January on which the assessment is made, and not in excess of 35% of said use value.

2. A transfer of property without a change in its use classification shall not require a reassessment based exclusively upon the sale value of such property.

We further said in *Cantrell*: "In order to value property according to its use, it is necessary to classify property according to its use. Entirely different procedures are used for the valuation of residential, commercial, industrial, and agricultural properties, and uniform standards of classification of property in order to facilitate the application of uniform procedures would be desirable."

Following the rendition of the decision in *Cantrell* (Rehearing Denied April 28, 1980) and up to the time of filing of *Poulos III* (this case), the wide diversity of assessment

percentages applied by the various county assessors to real property assessments within the counties has (according to the exhibits) continued to proliferate.

Dividing the real property into three classes, residential, commercial-industrial, and agricultural, the average mean assessment ratios range from 6.40% assessment in Adair County to 13.58% in Oklahoma County. The average "mean" assessment ratio in Oklahoma County exceeds 212% of the average mean assessment in Adair County. The wide disparity in assessment ratios as applied in the various counties is illustrated by the following:

| HIGHEST AVERAGE MEAN ASSESSMENT RATIOS BY COUNTY | | LOWEST AVERAGE MEAN ASSESSMENT RATIOS BY COUNTY | |
|---|---|---|---|
| Oklahoma | 13.58% | McCurtain | 6.60% |
| Harmon | 13.08% | Adair | 6.40% |
| Canadian | 12.92% | Choctaw | 6.66% |
| Greer | 12.37% | Cherokee | 7.14% |

with wide variations between the extremes.

The disparity in the assessment ratios applied to property within the use classifications is even greater. For example, with reference to agricultural land, the ratio applied in McCurtain County of 2.71% as compared with Oklahoma County which is 666% greater.

On June 20, 1981, the Commission in accordance with 68 O.S. 1971, § 2462 and Enrolled Senate Concurrent Resolution No. 54 of the 37th Oklahoma Legislature (O.S.L. 1980) transmitted to the Board "Techniques, Guidelines and Definitions for Determining Use Value of Real Property for Ad Valorem Tax Purposes," and "1981 Comprehensive Ratio Study Report" along with "Recommendations of the Oklahoma Tax Commission for Statewide Equalization." The Commission found and determined, based upon its studies and research, that "a single assessment ratio has not been applied to determine assessed valuation of all real property within each county and that the assessed valuations of real property are not equalized among the various counties pursuant to this Board's adopted guideline setting the definite assessment ratio at 12%."

The Commission made the following recommendations to the Board:

1. That, the State Board of Equalization act upon the submitted techniques, guidelines and definitions by approval thereof.

2. That, the State Board of Equalization increase or decrease, as the case may be, the assessment valuations of the classifications of real property within each county so that a single assessment ratio is applied to the valuation of all real property within each county to determine assessed valuation, in accordance with the Recommendations of the Oklahoma Tax Commission for Statewide Equalization.

3. That, the State Board of Equalization increase or decrease, as the case may be, the assessment valuations of real property so that the assessment ratio of each county is within the permissible three point deviation of the 12% ratio rate set by this Board, in accordance with the Recommendations of the Oklahoma Tax Commission for Statewide Equalization submitted herewith.

At a meeting held on July 21, 1981, the State Board of Equalization did the following:

1. Accepted and approved the abstracts of assessments submitted by the respective County Assessors.

2. Set aside the ratio study conducted by the Oklahoma Tax Commission and the findings therein contained, "although conducted in good faith, due to the brevity in time following the Supreme Court decision in *Cantrell v. Sanders (supra)* and the Attorney General's Opinion No. 80–253 issued January 29, 1981, it was not possible for the State Board of Equalization and the Oklahoma Tax Commission to develop and distribute to the County Assessors techniques, guidelines and definitions for determining the use value of real property for ad valorem tax purposes as directed by the foregoing Supreme Court decision, Senate Resolution and Attorney General's opinion, thereby creating an apparent disparity between the methods employed by the County Assessors of the State of Oklahoma and the methods employed by the Oklahoma Tax Commission in conducting the use value/as-

sessment ratio study of said counties of the State of Oklahoma."

3. Adopted and approved the Techniques, Guidelines and Definitions for Determining Use Value of Real Property for Ad Valorem Tax Purposes, as revised by a County Assessors' Committee and a Committee of Tax Commission officials, to be used in the 1982 tax assessments.

The Techniques, Guidelines and Definitions for Determining Use Value of Real Property for Ad Valorem Purposes as adopted was transmitted to the various county assessors on August 4, 1981.

■ The Board failed to perform the duty imposed upon it by law when it failed—without any excuse—to adopt and apply a standard ratio of 12% with permissible inter-county deviations of not more than 3% above or below the mean as recommended by the Commission in determining the adjusted percentile to be applied to all real property within the state, regardless of its classification. While we held in *Cantrell* that it is the statutory duty of the county assessor to initially set the assessment percentage on all property within the county, as we have heretofore pointed out, it was the overriding constitutional and statutory duty of the Board to make such adjustments as will achieve uniformity and equality of taxation on a statewide basis, pursuant to 68 O.S.Supp.1979, § 2463 and Art. 10, § 21 of the Oklahoma Constitution.

There being no valid reason shown for not adopting the 12% ratio, as recommended by the Commission, we hereby determine by judicial decree that all property within the State of Oklahoma subject to ad valorem taxes shall be assessed at 12% of its taxable value with permissible inter-county deviations of not more than 3% above or below the mean, and that said percentage shall apply to the 1982 tax year and thereafter until such time as the same shall be changed by the recommendation of the Commission and the determination by the Board based upon good and sufficient valid, legal grounds as provided in 68 O.S.1971, § 2463.

As we said in *Poulos I, supra,* (at p. 1137):

"Although a precise uniformity is not required [see *Board of County Commissioners of Canadian County v. State Board of Equalization,* 363 P.2d 242 (Okl. 1961)], a rate which is inherently and basically fair to all citizens is mandated by the Constitutions of the United States and the State of Oklahoma. It is patently clear that to meet the standards of the Constitution and of the statutes, the adjustment and equalization of the valuation of real and personal properties of all the several counties of this state must be made on an annual and uniform basis."

And as this Court realistically observed in *Appeal of McNeal,* 35 Okl. 17, 128 P. 285 (1912):

"Necessarily, in Oklahoma, as in every other state, an exact and equal distribution of the burden of taxation is not effected. It has never been since government was instituted, and probably never will be. There will never come a time when some of the taxpayers do not pay more than they should, and when others do not pay less."

We believe the 12% ratio with the permissible deviations of not more than 3% above or below as between and among the various counties of the state is basically fair and reasonable, and allows for individual county adjustments which may be determined to be appropriate by reason of a particular county's needs.

Having so determined, we hereby modify our holding in *Poulos II* in that we do not now require the implementation of precise mathematical uniformity and hold that the permissible variations herein authorized are in compliance with Art. 10, § 5 of the Oklahoma Constitution requiring that "taxes shall be uniform upon the same class of subjects."

We have reviewed the Techniques, Guidelines, and Definitions for Determining Use Value of Real Property for Ad Valorem Tax Purposes as revised by a committee of County Assessors and a committee of Tax Commission officials and approved by the Board in its meeting held on July 21, 1981,

and find the same to be in compliance with the requirements with Art. 10, § 5 and § 8 of the Oklahoma Constitution, and we determine by judicial decree that the three classifications of real property, i.e., residential, commercial-industrial, and agricultural, and the methodology for determining the value of real property of each class shall apply in determining tax assessments for the tax year 1982, and thereafter until such time as the same shall be changed by the recommendation of the Commission and the determination by the Board based upon good and sufficient valid, legal grounds, or until changed by Acts by the Legislature adopted pursuant to Art. 10, § 8 of the Oklahoma Constitution.

█ The view has been expressed that this Court should not determine the percentage ratio by which all real property is to be taxed because that is a duty imposed by the Constitution upon the Board and that the Court should instead issue another writ of mandamus compelling the Board to do its duty. That is what the Court did in *Poulos II* (and refrained from doing in *Poulos I* in the expectation the Board would perform its duty). That writ of mandamus issued in 1976 has not been followed. It would apparently be a vain and useless thing to issue another. While it is of course vitally important to recognize and maintain the separation of functions between the three branches of the state's government, that doctrine is not so inflexible that it would render this Court impotent to enter its decree judicially determining a percentage ratio that would, in view of the record before us, satisfy the commands of the Constitution, at least until the Board takes action to carry out its Constitutional duty. The command that taxes be uniform was thought by the people important enough to place in the Constitution. It is therefore important enough to invoke the authority of this Court. Except for the current tax year, there is nothing in this opinion to prevent the Board from fulfilling its duty by setting a different percentage ratio in the future.

█ Petitioner urges that this Court should award him a reasonable attorney fee and costs of these proceedings. Petitioner points out that this action is public interest litigation and that the same was instituted by him and his attorney for no personal benefit other than that shared in common by property owners generally within the state, and that the case has been undertaken by him without "significant financial support from any interest group." While we are mindful of these considerations, and of the adage that "virtue is its own reward," we are well aware such "virtue" does not pay the office overhead or reimburse for out-of-pocket expenses attendant with such a case as is here before us. However, we find no basis, and none has been pointed out to us, whereby, under the law, this Court can award Petitioner an attorney fee.

As a general rule, and one to which this Court is committed, attorney fees to a prevailing party are not recoverable in the absence of a statute or an enforceable contract. *City Nat. Bank & Trust Co. v. Owens*, Okl., 565 P.2d 4 (1977).

An exception to the rule was recognized in *State ex rel. Burk v. Oklahoma City*, Okl., 522 P.2d 612 (1973), later app. 556 P.2d 691. In *Burk*, it was held that the vacation of a public street was void and the owners of a building erected thereon were liable for lease payments to the city. But in that case there was the creation of a common fund over which the Court had a degree of control, and there we awarded the successful protagonist an attorney fee to be paid out of the lease payments. (*State ex rel. Burk v. City of Oklahoma City*, Okl., 598 P.2d 659 (1979).)

Again in *City Nat. Bank & Trust Co. v. Owens, supra*, we recognized a second exception. There we held that where a party to a lawsuit has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, such overriding considerations justify an award of attorney fees and costs incurred directly as a result of such misconduct. In *Owens*, we carefully delineated between the costs and attorney fees incurred as a direct

result of the other party's misconduct, and an award of costs and attorney fees for the entire litigation, awarding the former, not the latter.

In the case before us (*Poulos III*), there is no creation of a common fund as a result of the litigation which is under the control of this Court, out of which this Court can order attorney fees to be paid, and neither do we find that Respondents have acted "in bad faith, vexatiously, wantonly, or for oppressive reasons" to such a degree as to constitute "overriding considerations" indicative of a need for such a recovery. Equality of taxation is not only a laudable objective, it is a constitutionally mandated imperative. As in the case of all lofty ideals, a struggle for attainment precedes realization of the goal. Whatever the shortcomings of the Respondents, or any of them, may be, there is nothing in this record which impugns their good faith or their motives, or which impels this Court to find and determine that this case falls within any recognized exception to the general rule. It is therefore ordered that each party pay his own costs and attorney fees.

IRWIN, C.J., BARNES, V.C.J., and DOOLIN, OPALA and WILSON, JJ., concur.

HODGES, J., concurs in part and dissents in part.

SIMMS and HARGRAVE, JJ., dissent.

HODGES, Justice, concurring in part and dissenting in part.

I am in full concurrence with the majority opinion in its address of the issues of the methodology for determining the value of real property and in the denial of attorney fees.

However, I must respectfully dissent to the imposition by judicial legislation of a standard 12% ratio to be used in determining the adjusted percentile to be applied to all real property within the state. The setting of a numerical percentile is the constitutional duty of the Board of Equalization pursuant to the Okla.Const. art. 10, § 21. I would grant the writ of mandamus and instruct the Board to perform its constitutional duty.

SIMMS, Justice, dissenting:

When members of one branch of government fail or refuse to do their duty, the problems are not cured by the Court simply doing it for them. This only creates new and larger problems in addition to those still left unresolved. More extensive discussion on this subject can be found in the minority opinions in *State, ex rel., Poulos v. State Board of Equalization, Okl., 552 P.2d 1134, 1138 (1975)* and *State, ex rel., Poulos v. State Board of Equalization, Okl., 552 P.2d 1138, 1139 (1976)*.

It is not a proper function of this Court to legislate a system of property assessment to equalize taxation. That job is given to the Board of Equalization by the Constitution and statutes.

It is, however, a proper function of the judiciary to enforce compliance with the law and orders of a court. There are various proceedings which can be instituted to obtain constitutionally permissible remedies. If and when those remedies are pursued, we should entertain the action. Meanwhile, I am opposed to this Court performing the legislative functions assigned to the Board of Equalization.

I am authorized to state that Justice HARGRAVE joins me in this dissent.