Dear Superintendent Garrett,
¶ 0 This office has received your letter requesting an official Attorney General Opinion addressing, in effect, the following question:
What constitutional or statutory authority exists whichauthorizes the State Board of Equalization to interpret theOklahoma Constitution and direct the Oklahoma Tax Commission toimplement Article X, § 8B of the Constitution consistent with theBoard's interpretation?
¶ 1 The Ad Valorem Tax Code, 68 O.S. 1991 and Supp. 1998, §§2801-2899, makes the assessment of taxes on real property a multi-stage process involving county assessors, the Oklahoma Tax Commission and the Oklahoma State Board of Equalization ("the State Board").
¶ 2 It is the county assessor's duty to assess all taxable property within the county. 68 O.S. Supp. 1998, § 2819[68-2819]. Section 2817 of Title 68 and Article X, § 8 of the Oklahoma Constitution mandate that all taxable real property shall be assessed annually as of the first day of January at its fair cash value.[1]
Section 2875 of Title 68 creates the Ad Valorem Division of the Oklahoma Tax Commission and provides for its duties. Subsection (D) of Section 2875 reads:
 D. The Ad Valorem Division shall have the authority and it shall be its duty to:
 1. Confer with and assist county assessors and county boards of equalization in the performance of their duties, to the end that all assessments of property be made relative, just and uniform and that real property and tangible personal property may be assessed at its fair cash value estimated at the price it would bring at a fair voluntary sale;
. . . .
 5. Conduct training schools, institutes, conferences and meetings for the purpose of improving the qualifications of county assessors and their deputies as required by law;
 6. Prepare and furnish from time to time to county assessors an assessors' manual. Such manual shall include, but not be limited to, valuation methodologies for property in a county for which no comparable property exists in order for a county assessor to establish a value for ad valorem tax purposes. . . .
. . . .
 8. Adopt regulations establishing uniform procedures and standards for the appraisal of real property by county assessors[.]
. . . .
 E. The county assessors shall not use any form not prescribed or approved by the Ad Valorem Division.
 F. Each county assessor shall comply with the rules, regulations, and guides adopted by the Ad Valorem Division.
68 O.S. Supp. 1998, § 2875[68-2875].
¶ 3 Article X, § 21 of the Oklahoma Constitution creates the State Board of Equalization, and provides for its duties:
 There shall be a State Board of Equalization consisting of the Governor, State Auditor, State Treasurer, Lieutenant Governor, Attorney General, State Inspector and Examiner and President of the Board of Agriculture. The duty of said Board shall be to adjust and equalize the valuation of real and personal property of the several counties in the state, and it shall perform such other duties as may be prescribed by law, and they shall assess all railroad and public service corporation property.
Okla. Const. art. X, § 21(A).
¶ 4 Section 2864 of Title 68 also imposes the duty to equalize, correct and adjust the various county assessments. Section 2864 provides in pertinent part:
 [T]he State Board of Equalization . . . must hold a session at the Capitol of the state, commencing at 10:00 a.m. on December 1, or the first working day thereafter, of each year for the purpose of equalizing the taxable property values of the several counties for the next following assessment year. . . .
 B. It shall be the duty of the Board to examine the various county assessments and to equalize, correct and adjust the same as between and within the counties by determining the ratio of the aggregate assessed value of the property or any class thereof, in any or all of them to the fair cash value thereof as herein defined, and to order and direct the assessment rolls of any county in this state to be so corrected as to adjust and equalize the valuation of the real and personal property among the several counties during the next succeeding assessment year. . . .
. . . .
 E. The Board shall equalize, correct and adjust the various county assessments as between the counties as required by this section by ordering any increase or decrease required as prescribed by this subsection. The Board shall order any increase or decrease required to comply with the assessment ratio in effect for the applicable assessment year pursuant to the provisions of Section 8 of Article X of the Oklahoma Constitution.
68 O.S. Supp. 1998, § 2864[68-2864].
¶ 5 In 1996, pursuant to Legislative Referendum No. 306, State Question No. 676, Section 8B was added to Article X of the Oklahoma Constitution and now provides in pertinent part as follows:
 Despite any provision to the contrary, the fair cash value of any parcel of locally assessed real property shall not increase by more than five percent (5%) in any taxable year. . . . The provisions of this section shall be effective January 1, 1997, and thereafter for counties which are in compliance with the applicable law or administrative regulations governing valuation of locally assessed real property as of such date. For counties which are not in compliance with such law or regulation as of January 1, 1997, the provisions of this section shall be effective January 1 of the year following the date the county is deemed to be in compliance with such laws or regulations as provided by law.
Okla. Const. art. X, § 8B.
¶ 6 Prior to the addition of Section 8B, property was valued at its fair cash value as of January 1 with no limitations as to increases from the value established in the prior year. Section 8B, however, limits increases to five percent (5%) for any taxable year. This limitation was effective on January 1, 1997. In counties not in compliance on that date with the applicable laws or regulations, the limitation is in effect the January 1 after they are deemed in compliance.
¶ 7 At its meeting of December 1, 1997, the State Board of Equalization adopted the following Resolution:
 The Oklahoma Tax Commission shall promulgate rules to implement Article X Section 8B of the Oklahoma Constitution and Title 68 Oklahoma Statutes § 2717.1[68-2717.1], which shall prohibit increasing the fair cash value of locally accessed [sic] real property by more than five percent (5%) in any taxable year unless the real property is transferred, changed or conveyed to another person. This cap shall apply on January 1, 1997, to all counties in compliance with the applicable laws and administrative regulations governing valuation of locally assessed real property. For those counties this Board deemed out of compliance as of January 1, 1997, this cap shall apply January 1 of the year following the date the county is deemed to be in compliance with the aforementioned laws or regulations. Once a county is in compliance on or after January 1, 1997, the cap shall not be removed even though the county is deemed out of compliance.
¶ 8 The Board's Resolution reflects its interpretation that once a county is in compliance there shall not be increases in excess of five percent (5%) merely because a county is subsequently found out of compliance.
¶ 9 The Oklahoma Tax Commission is required to submit to the State Board of Equalization its findings as to the adjustment and equalization of the valuation of real and personal property of the various counties. This is done by computing a ratio comparing the assessed value of real property to the full or fair cash value of the property.[2] 68 O.S. 1991, § 2865[68-2865](A). These findings are the basis upon which the State Board performs its constitutional and statutory duties.
¶ 10 Adjustment and equalization is an on-going process and not an isolated event. A time table for ad valorem taxation should be reviewed to understand the State Board's duty. The time table is as follows:

 Date Action Authority Title 68
December 1 Tax Commission presents findings to State § 2864 § 2865
 Board. State Board adopts order equalizing for
 next succeeding assessment year
4th Monday in April County assessor sends assessment roll to § 2842(B)
 county board of equalization
Not later than May 31 County board equalizes assessment roll § 2863
Not later than June 15 County assessor prepares abstract from § 2867(A)
 equalized assessment and transmits the same
 to Tax Commission
3rd Monday of June Tax Commission submits findings as to § 2858(A)
 assessment of railroad, air carrier and public
 service corporation property to State Board of
 Equalization
Within 10 days of receipt from County assessor prepares and files with county § 2867(D)
State Board of certificates of excise board an abstract of the assessed
assessment of railroad, air valuations of the county
carrier and public service
corporations and the
equalized value of real and
personal property
By October 1 County assessor prepares tax rolls § 2868(A)

¶ 11 The Tax Commission's findings are presented to the State Board of Equalization as recommendations for the Board's final action under Section 21 of Article X of the Oklahoma Constitution. Subsections A and B of Section 2865 of Title 68 provide:
 A. The Oklahoma Tax Commission shall render its findings as to the adjustment and equalization of the valuation of real and personal property of the several counties of the state by reporting to the State Board of Equalization the ratio derived from comparing the assessed value of the real property of each county to the full or fair cash value of the real property of such county; and such findings shall, on or before December 1 of each calendar year, be presented to the State Board of Equalization as recommendations for its final action under Section 21
of Article X of the Oklahoma Constitution.
 B. All duties, powers and authority relating to the adjustment and equalization of the valuation of real and personal property of the several counties of the state, shall be vested in the Oklahoma Tax Commission, excepting only the duties, powers and authority of the State Board of Equalization, as fixed and defined by Section 21 of Article X of the Oklahoma Constitution.
68 O.S. 1991, § 2865[68-2865].
¶ 12 In State ex rel. Poulous v. State Board of Equalization,646 P.2d 1269 (Okla. 1982), the Oklahoma Supreme Court, after a series of three cases, found that the State Board of Equalization had failed to perform its constitutional duty when it did not adopt and apply a standard ratio, with permissible inter-county deviations, in determining the adjusted assessment percentage to be applied to all real property within the State. The Court found that the State Board is under a constitutional mandate to ensure equalization of property tax assessments within the State.
¶ 13 In addition to the Article X, § 8B limitation on increases, in 1996, also pursuant to legislative referendum, Article X, § 8(A)(2) of the Oklahoma Constitution was amended to provide that "[r]eal property shall not be assessed for ad valorem taxation at a value less than eleven percent (11%) nor greater than thirteen and one-half percent (13.5%) of its fair cash value." Prior to this amendment the State Board of Equalization was under a constitutional duty to adopt the assessment ratio and to enforce equalization by ordering those counties not within the ratio to make necessary adjustments to apply the ratio to property within their county.
¶ 14 The 1996 constitutional amendments effectively relieved the State Board of its obligation to establish an assessment ratio. It did not, however, relieve the State Board of its duty to enforce equalization by ordering those counties assessing real property for ad valorem taxation at less than eleven percent (11%) or greater than thirteen and one-half percent (13.5%) of its fair cash value to make the necessary adjustments required to bring that county within the constitutional ratio.
¶ 15 In the first Poulous case, the Oklahoma Supreme Court held that a system that does not equalize ad valorem assessments throughout the State is unfair and invidiously discriminatory; and that it was the manifest intention of the Oklahoma Legislature to equalize ad valorem assessments so that every parcel and item of taxable property in the State be assessed at the same percentage of its value. State ex rel. Poulous v. StateBoard of Equalization, 552 P.2d 1134 (Okla. 1975). In the thirdPoulous case, the Court made the following observation:
 While we held in Cantrell that it is the statutory duty of the county assessor to initially set the assessment percentage on all property within the county, as we have heretofore pointed out, it was the overriding constitutional and statutory duty of the board to make such adjustments as will achieve uniformity and equality of taxation on a statewide basis, pursuant to 68 O.S.Supp. 1979, § 2463
and Art. 10, § 21 of the Oklahoma Constitution.
State ex rel. Poulous v. State Board of Equalization,646 P.2d 1269, 1273 (Okla. 1982) (emphasis added).
¶ 16 One of the constitutional duties of the State Board of Equalization is to adjust and equalize the valuation of real and personal property of the several counties of the State. Equalization is defined as:
 "Equalization" means the process for making adjustments to taxable property values within a county by analyzing the relationships between assessed values and fair cash values in one or more use categories within the county or between counties by analyzing the relationship between assessed value and fair cash value in each county[.]
68 O.S. Supp. 1998, § 2802[68-2802](16). Equalization is the act of raising or lowering the total valuation placed upon a class or sub-class of property in the aggregate within the relevant jurisdiction. The State Board acts upon recommendations made by the Oklahoma Tax Commission from its equalization ratio study. The State Board is, however, ultimately responsible for equalization. Misapplication of the new constitutional provisions relating to fair cash value by the Oklahoma Tax Commission could result in a ratio study which does not accurately reflect the true relationship between assessed value and fair cash value within and between counties. The ultimate result would be a situation wherein properties are not equalized on a Statewide basis. This is the result the Constitution and statutes seek to avoid.
¶ 17 You have asked this office to determine whether the State Board of Equalization may interpret the Oklahoma Constitution and direct the Oklahoma Tax Commission to take action consistent with the Board's interpretation. In 1934, in In re Assessment ofKansas City Southern Railway Company, 33 P.2d 772 (Okla. 1934), the Oklahoma Supreme Court discussed the nature of the State Board of Equalization. The Court determined that the State Board of Equalization is an integral part of the necessary machinery for the assessment of taxes. The Court further found that:
 [The State Board of Equalization] is an administrative body, legislative in character, composed of members chosen from the executive department, a special tribunal, a legal entity, performing public functions, created by the Constitution and charged with specific duties[.]
Id. at 774.
¶ 18 As an administrative body, the Oklahoma State Board of Equalization may, and should, interpret or construe the statutes and constitutional provisions which it is called on to administer or enforce. While interpretation of statutes is ultimately a question for the courts, the question of statutory interpretation is a function that should, in the first instance, be left to the appropriate administrative body.
¶ 19 In the final analysis, equalization is the responsibility of the State Board of Equalization. Misapplication of the standard established by Article X, § 8B of the Oklahoma Constitution could result in establishment of fair cash values in some counties which exceed the constitutional limits. The effect would be to assess properties in excess of the constitutionally mandated ratios, and to create a system which does not equalize property on a Statewide basis. The Supreme Court has held that Statewide equalization is the duty of the State Board of Equalization. The State Board may, therefore, interpret the Oklahoma Constitution as it relates to equalization and direct the Oklahoma Tax Commission to perform its review of county assessors and make its equalization report consistent with the Board's interpretation.
¶ 20 It is, therefore, the official Opinion of the AttorneyGeneral that:
The Oklahoma State Board of Equalization, while performing itsconstitutionally mandated duty found at Article X, § 21 of theOklahoma Constitution, to adjust and equalize the valuation ofreal and personal property of the several counties of the Stateto achieve uniformity and equality of taxes has the authority tointerpret the Oklahoma Constitution and statutes and to directthe Oklahoma Tax Commission to take action consistent with theBoard's interpretation.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DOUGLAS F. PRICE ASSISTANT ATTORNEY GENERAL
[1] Fair cash value is defined in the Ad Valorem Tax Code as the value or price at which a willing buyer would purchase and a willing seller would sell property. 68 O.S. Supp. 1998, §2802[68-2802](18).
[2] Ad valorem taxes in Oklahoma are calculated using the following formula: Fair cash value x assessment ratio = assessed valuation — exemptions = taxable value x millage rate = taxes due.